**In re Terry WALTERS and Deborah Walters, Debtors.**

**WESTINGHOUSE CREDIT CORPORATION, Plaintiff,**

**v.**

**Terry WALTERS and Deborah Walters, Defendants.**

**Adv. No. 1–81–0202.**
**Related Case No. 1–81–01403.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Feb. 9, 1982.

16. *In re Cantwell*, Bankr. No. 78-918EG, slip. op, at 6 (E.D.Pa. April 22, 1980) (opinion of Judge Green).

Paul E. Lukey, Cincinnati, Ohio, for plaintiff Westinghouse Credit Corp.

Ronald L. Burdge, Franklin, Ohio, for defendants-debtors.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Plaintiff commenced the above captioned adversary proceeding by the filing of a complaint for reclamation, determination of dischargeability of debt and objection to discharge. All three claims for relief arise out of plaintiff's having been assigned a security agreement under which defendants granted to the seller-assignor a purchase money security interest in certain exempt household goods. Defendants have filed a motion to dismiss the complaint, alleging that the agreement between the parties and the security interest created therein are void and unenforceable because the agreement violates the Ohio Retail Installment Sales Act (hereinafter "RISA"), Ohio Revised Code, § 1317.01 et seq. Defendants have also filed a motion for summary judgment on all three claims set forth in the complaint. In addition, defendants assert several counterclaims, including two counterclaims for recoupment under the Truth-in-Lending Act, (hereinafter "TILA") 15 U.S.C. § 1601 et seq. Both parties have filed motions for summary judgment on the TILA counterclaims.

The facts relevant to the claims set forth in the complaint are as follows. On April 4,

1979, defendants purchased from the Kash D. Amburgy Supply Co. (hereinafter "seller") certain household goods, the purchase price and other charges to be paid in thirty-six installments. Defendants and the seller executed a "Security Agreement" (hereinafter "Agreement") under which the seller retained a purchase money security interest in the goods sold. The Agreement contained an assignment clause—which will be more fully discussed hereafter—by which the seller assigned to plaintiff all of its rights, title and interest in the Agreement and the goods covered by the Agreement. The Agreement also contains a provision which states:

"COSTS: Buyer shall pay all actual and reasonable costs of collection (whether incurred before or after repossession), including such costs occasioned by Buyer's removal of the Goods from the State without Seller's written permission or, by Buyer's failure to notify Seller of any change of residence or to communicate with Seller within 45 days after failure to make any payment due hereunder. *Buyer shall pay reasonable attorneys' fees (15% of the amount due and payable if not prohibited by law)* and court costs incurred by the Seller in pursuing its remedies, including those incurred by Seller in obtaining a deficiency judgment." (*emphasis added*)

1. Defendants' Motion to Dismiss.

■ Alleging a default in payment of $801.48 to plaintiff and a demand by plaintiff for return of the goods, the first claim for relief in the complaint seeks reclamation of the subject goods. Defendants have filed a motion to dismiss the complaint on the ground that the Agreement, by providing for attorneys' fees in the above quoted paragraph, violates RISA, and is thereby rendered unenforceable and void as is the security interest provided for in the Agreement. Because the "Motion to Dismiss"

presents material outside the pleading to wit, the Agreement itself and an interrogatory and the answer thereto, we shall treat the motion as one for summary judgment under Rule 56. *See* F.R.C.P. 12(b).

The issue presented by this motion is whether a provision in a retail installment sales contract for the payment of attorneys' fees in the manner to be found in the instant Agreement, renders the contract unenforceable under RISA. We hold that it does not and overrule defendant's motion on this score.

RISA is a compilation of several statutes regulating the conduct of transactions that constitute "retail installment sales." No question is raised as to whether the transactions between the parties is a "retail installment sale" as defined by RISA.[1] The applicability of RISA is therefore not drawn into dispute.

The pertinent sections of RISA, for the purpose of deciding the present motion, relate to first, the charges that may permissibly be contained in the contract, and second, the circumstances under which a retail installment sales contract is rendered unenforceable. Section 1317.07 provides in part:

"No retail installment contract authorized by section 1317.03 of the Revised Code which is executed in connection with any retail installment sale shall evidence any indebtedness in excess of the time balance fixed in the written instrument in compliance with section 1317.04 of the Revised Code, but it may evidence in addition any agreements of the parties for the payment of delinquent charges, as provided for in section 1317.06 of the Revised Code, taxes, and any lawful fee actually paid out or to be paid out, by the retail seller to any public officer for filing, recording, or releasing any instrument securing the payment of the obligation owed on any retail installment con-

1. Section 1317.01(A) provides that:
"As used in this chapter:
(A) 'Retail installment sale' includes every retail installment contract to sell specific goods, every consumer transaction in which the cash price may be paid in installments over a period of time, and every retail sale of specific goods to any person in which the cash price may be paid in installments over a period of time."

tract. No retail seller, directly or indirectly, shall charge, contract for, or receive from any retail buyer, any further or other amount for examination, service, brokerage, commission, expense, fee, or other thing of value. A documentary service charge customarily and presently being paid on May 9, 1949, in a particular business and area shall not be prohibited if the same does not exceed five dollars per sale."

\*    \*    \*    \*    \*    \*

Section 1317.08 makes clear that a contract, and the security interest created thereby, that violates § 1317.07 shall not be enforceable against, among others, the buyer.[2]

In support of their motion, defendants present the following argument. By placing within the Agreement the provision whereby defendants are liable for attorneys' fees incurred by the seller in pursuing its remedies, a charge prohibited by § 1317.08 was "contracted for." Therefore, in accordance with § 1317.08, the Agreement and plaintiff's purchase money security interest are unenforceable and plaintiff has no basis for seeking reclamation, a determination of dischargeability of debt, or denial of discharge.

In our opinion, however, an attorneys' fee provision cannot reasonably be held to be included within the charges prohibited by § 1317.07. That section is clearly intended to protect the buyer against charges that are attributable to, but not expressly set forth in the contract as relating to the retail purchase itself. A detailed examination of § 1317.07 and related provisions supports the conclusion that § 1317.07 is directed at prohibiting the imposition of hidden costs upon an unwary consumer.

Section 1317.07 contains a general prohibition against contractual charges in excess of the "time balance" derived in accordance with § 1317.04. The "time balance" under § 1317.04 is stated to be the sum of the amount of the finance charge and the "principal balance" (which, in turn, is derived by adding together the cost of the buyer's procuring insurance and the "unpaid balance", which is the cash price less any down payment). The "time balance" is clearly an item relating to the retail purchase itself. Additionally, § 1317.07 permits inclusion in the contract of a provision for "delinquent charges" which are amounts chargeable for late payment of installments. O.R.C. § 1317.06(B). Finally, § 1317.07 allows the contract to set forth the charges for taxes, and fees payable to public officers for filing, recording or releasing security instruments. All of the above items are charges necessarily attributable to the purchase of the goods. The attorneys fees provision in question, however, is merely a potential expenditure that may arise sometime in the future, unrelated to the financing of the retail purchase. Our conclusion that the attorneys' fee provision in the Agreement is not disabling is reinforced by the further language to be found with it, which may make it inapplicable altogether, "payable if not prohibited by law." Having found the Agreement not to violate RISA, it remains enforceable as does plaintiff's purchase money security interest. Defendant's motion to dismiss therefore shall be overruled.

2. **Defendants' Motion for Summary Judgment.**

We shall next address defendants' motion for summary judgment directed at the

---

2. "No retail installment contract which evidences an indebtedness greater than that allowed by section 1317.06 or 1317.07 of the Revised Code and no retail installment contract in connection with which any charge prohibited by sections 1317.01 to 1317.11 inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer, or any other person who as surety, indorser, guarantor or otherwise is liable on the obligation created by any retail buyer on any retail installment contract, and no security interest created by any such retail installment contract which is greater than that allowed by sections 1317.06 and 1317.07 of the Revised Code or in connection with which any charge is prohibited by sections 1317.01 to 1317.11, inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer or any of the aforementioned persons, in default under the terms of the retail installment contract . . .".

claims enumerated in the complaint. Plaintiff's first claim for relief is for reclamation of the subject goods for default in payment in accordance with the terms of the Agreement which grant to plaintiff a purchase money security interest. The motion for summary judgment relative to this claim is based upon two grounds. First, defendants argue that reclamation is unavailable to plaintiff for failure to comply with 11 U.S.C. § 546(c). Section 546(c) provides in part that:

"(c) The rights and powers of the trustee under sections 544(a), 545, 547 and 549 of this title are subject to any statutory right or commonlaw right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods , before ten days after receipt of such goods by the debtor; and . . . ."

This section is clearly inapplicable to the present proceeding. Section 546(c)—as indicated by the title of § 546, "Limitations on Avoiding Power"—provides to a seller a method by which it may escape avoidance powers of the trustee under §§ 544(a), 545, 547 and 549. The statute is intended to limit the trustee's powers so as to permit certain sellers of goods to exercise state law reclamation rights, primarily under § 2–702 of the Uniform Commercial Code. See H.R. Rep. No. 95–595, 95th Cong., 1st Sess., 371–72 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 86–87 (1978), U.S.Code Cong. & Admin. News, p. 5787.

Defendants argue that by failing to make a timely written demand upon defendants for return of the goods in accordance with § 546(c), plaintiff has no right to reclaim the goods. The right to reclaim goods, however, may be exercised in circumstances other than those governed by § 546(c), such as here, where reclamation is sought pursuant to plaintiff's lien rights.

Defendants argue next that the complaint fails to state a claim upon which

relief can be granted because they have no power to transfer property of the estate absent an authorization by the trustee who is not a party to the action. This adversary proceeding was filed three days prior to our order approving the trustee's report of exemptions. Defendants had claimed as exempt the property subject to plaintiff's security interest. By claiming the property as exempt, and there having been no objection to the trustee's approval of the exemptions claimed, the property was no longer "property of the estate." See House Report, *supra*, at p. 368; Senate Report, *supra*, at p. 82, U.S.Code Cong. & Admin. News at pp. 5868, 6324; *In re Adams*, 12 B.R. 540, 4 CBC 2d 1054 (Bkrtcy., D. Utah, 1981); *In re Lantz*, 7 B.R. 77 (Bkrtcy., S.D., Ohio, 1980).

While defendants' assertion may be correct that approval of the trustee is necessary before a debtor may relinquish or otherwise dispose of property of the estate, in the absence of any objection to the trustee's report, the property claimed as exempt became exempt and thereby lost its character as property of the estate. Thus the events subsequent to the filing of the complaint mentioned above have caused the issue raised by defendants to become moot.

Plaintiff's second claim for relief seeks a determination of nondischargeability of debt for a willful and malicious injury to property under 11 U.S.C. § 523(a)(6). In support of this claim, plaintiff alleges only that defendants willfully and maliciously converted the goods to their own use and refused to return them despite plaintiff's demand for their return. It is well established that a conversion may take place when there is a refusal to surrender possession of goods after a demand by one lawfully entitled to possession. 18 Am.Jur.2d, *Conversion*, § 43, at pp. 182–83. Further, a demand and refusal is necessary to sustain a claim for relief in conversion when a defendant has purchased property from a mortgagor and takes possession without doing anything inconsistent with the mortgagee's rights. *North Canton Bank v. Cocklin*, 46 Ohio App. 27, 187 N.E. 638 (Ct.App. Stark County 1933).

■ By affidavit of Mrs. Walters, a defendant herein, defendants deny that any request was made by plaintiff for return of the goods.

"On motion for summary judgment, affidavits containing allegations of dispositive facts must be denied on oath by the adverse party. 'If he does not so respond, summary judgment, if appropriate, shall be entered against him.' Rule 56, Fed.R. Civ.P."

*Gillmore v. Procter and Gamble Co.,* 417 F.2d 615, 617 (6th Cir. 1969).

Defendants' uncontroverted affidavit contains dispositive facts as plaintiff's claim for conversion rests only on an allegation of a demand for the goods and a refusal to relinquish possession. A grant of summary judgment on this claim in favor of defendants is therefore appropriate.

■ Plaintiff's third claim for relief seeks a denial of discharge to defendants under 11 U.S.C. § 727(a)(2)(A), and 11 U.S.C. § 727(a)(5)(7). We hold that defendants are entitled to summary judgment on this third claim for relief.

The relevant subsections of § 727 provide that:

"(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

\* \* \* \* \* \*

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

\* \* \* \* \* \*

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case concerning an insider;"

Defendants have submitted affidavits and an excerpt of a deposition which tend to establish that the goods are in their possession and are in satisfactory condition, and that at the § 341 meeting of creditors or at any other time, they were not requested to explain any loss of assets.

Despite defendants' affidavits and other documentary material showing that neither a loss of assets nor an attempt to hinder, delay or defraud plaintiff has occurred, plaintiff has chosen to rely on the conclusory allegations of its complaint which amount to no more than a recitation of the statutory language of the above quoted subsections of § 727 of the Code. In accordance with Federal Rule of Civil Procedure 56(e) and *Gillmore v. Procter and Gamble Co., supra,* we hold that defendants' uncontroverted affidavits and discovery material establish the nonexistence of any genuine issue for trial and therefore grant summary judgment to defendants on plaintiff's third claim for relief.

3. **Summary Judgment on First Truth-in-Lending Counterclaim.**

■ Defendants' first counterclaim seeks recoupment for a violation of the TILA, specifically Federal Reserve Board Regulation Z, 12 C.F.R. § 226.8(a), promulgated by the Board pursuant to its power to implement the TILA. 15 U.S.C. § 1604. Both parties have moved for summary judgment on the counterclaim. The issue presented is whether the Agreement entered into between the parties adequately identifies plaintiff as a creditor as required by § 226.8(a). We hold that plaintiff was sufficiently identified as a creditor and there-

fore grant summary judgment on this counterclaim in favor of plaintiff.[3]

Section 226.8(a) provides that:

"At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the required disclosures are made and on which the creditor is identified. All of the disclosures shall be made together on either:

(1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction."

\* \* \* \* \* \*

Directly above the seller's signature line on the face of the Agreement under examination the following language is set forth: "ACCEPTED: THE FOREGOING AGREEMENT IS HEREBY ASSIGNED UNDER THE TERMS OF THE ASSIGNMENT ON THE REVERSE SIDE." Defendants, as buyers, signed the Agreement directly opposite the seller's signature. On the reverse side of the agreement is an assignment clause under which the seller assigned to plaintiff all of its rights, title and interest in the Agreement and the goods covered by the Agreement. This assignment clause specifically designates "Westinghouse Credit Corporation" as the recipient of the assignment. The face of the contract, however, makes no reference to an assignment other than the above quoted language nor does it designate plaintiff by name.

The question of whether a "creditor" within the meaning of TILA must be identified as a "creditor" by specific designation on an instrument or disclosure statement has been definitively answered by the Supreme Court. In *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 101 S.Ct. 2239, 68

L.Ed.2d 744 (1981), heavily relied upon by plaintiff, the face of the contract before the Court contained the following legend:

"The foregoing contract hereby is accepted by the Seller and assigned to Ford Motor Credit Company in accordance with the terms of the Assignment set forth on the reverse side hereof."

Holding this legend to be a sufficient disclosure of creditor status, the Court reasoned that:

"The statement notifying the buyer that the contract was, upon acceptance, assigned to FMCC served the purpose of the Act by disclosing the nature of the relationship of the finance company to the transaction."

*Id.* at 159, 101 S.Ct. at 2241, 68 L.Ed.2d at 749.

In light of *Cenance,* plaintiff need not have been characterized as a "creditor" in the Agreement. Defendants argue, however, that the Agreement fails to comply with § 226.8(a) because it does not specifically name plaintiff on the face of the contract. We disagree.

While several of the cases cited to us by defendants involved instruments wherein the creditor was designated by name on the face of the contract, these decisions do not specifically hold that such is a requirement of § 226.8(a). While there is authority in support of defendants' position, e.g. *Lauletta v. Valley Buick, Inc.,* 421 F.Supp. 1036 (W.D., Pa., 1976); *Pedro v. Pacific Plan of California,* 393 F.Supp. 315 (N.D., Cal., 1975); *First National Bank of Cincinnati v. Williams,* 19 Ohio Ops.3d 250 (App.Ct., 1980), these cases fail to persuade us that § 226.8(a) makes the naming of the creditor on the face of the contract mandatory. Section 226.8(a) merely requires that the *disclosures,* which relate to substantive credit terms, *see* § 226.8(b)(1)–(8), (c)(1)–(8), be made together on the instrument "on

---

**3.** Preliminary to our consideration of whether adequate identification was made in the agreement, we observe that no genuine issue of fact exists as to whether plaintiff is a "creditor" as defined by TILA. Plaintiff answered in the affirmative an interrogatory which states: "Are

you a creditor within the meaning of the federal Truth-In-Lending Act?" Therefore, plaintiff was required to be identified as a creditor in accordance with the Federal Reserve Board Regulations.

the same side of the page and above the place for the customer's signature...." The creditor need only be "identified" under § 226.8(a), and more specifically in the present situation, the creditor must be "clearly identified." 12 C.F.R. § 226.6(d).[4] We think that the notification of assignment on the face of the contract serves the purpose of TILA and meets the requirements of the regulations. As stated in *Sharp v. Ford Motor Credit Co.*, 615 F.2d 423 (7th Cir., 1980):

"The Congress declared the purpose of the Act to be 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit' 15 U.S.C. § 1601. In accordance with this statutory purpose, Regulation Z sets forth in meticulous detail the credit terms required to be disclosed under the Act 12 C.R.F. § 226.8(b). The Regulation further provides that these required terms be meaningfully disclosed on the forms used, and that the creditor(s) be clearly identified 12 C.F.R. § 226.8(a), (d). *However, neither the statute nor the regulations require that a creditor's identity be disclosed in a particular manner or be denominated by the specific and descriptive appellation of creditor.*"

*Id.* at 426 (*emphasis added*).

TILA is generally concerned with meaningful disclosure of substantive credit terms. *Id.* In furtherance of this objective § 226.8(a) requires that the face of the instrument or disclosure statement set forth specific, detailed disclosures of the terms of the credit transaction. Neither the precise language of § 226.8(a) nor any other regulation requires that the identity of the creditor(s) be disclosed on the face of the instrument.

4. This regulation provides:

"(d) Multiple creditors or lessors; joint disclosure. If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his

While the face of the Agreement does not specifically name plaintiff, we think that the notification of assignment statement located close to the point at which defendants signed the Agreement was sufficient to apprise defendants of plaintiffs relationship to the seller and to the transaction itself. *See Ford Motor Credit Co. v. Cenance,* 452 U.S. at 159, 101 S.Ct. at p. 2241, 68 L.Ed.2d at p. 749 (1981).

We therefore find that the Agreement's notification of assignment sufficiently discloses plaintiff's identity in compliance with TILA and § 226.8(a) of the regulations. Summary judgment is granted in favor of plaintiff on defendants' first counterclaim.

4. The Second Truth-in-Lending Counterclaim.

Subsequent to the parties' filings relative to the motions which we have heretofore discussed, defendants filed a motion for leave to amend their counterclaim and now apparently seek summary judgment on this additional counterclaim. The substance of the proposed amendment raises another alleged violation of TILA, specifically Regulation Z, 12 C.F.R. § 226.8(b)(1).

██ Federal Rule of Civil Procedure 15(a) [5] governs amendment of counterclaims and provides that:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

knowledge and the purview of his relationship with the customer or lessee. If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified."

5. Alterations to this Rule effected by Bankruptcy Rule 715 are inapplicable here.

We find that leave of court should be given to permit the amendment. We agree with defendants that the alleged TILA violation set forth in the amendment could not reasonably be pleaded prior to their obtaining certain pertinent information through discovery. The amendment will not hinder plaintiff's efforts to prepare for trial in this proceeding as no trial date has thus far been set. Further, the parties previous filings in regard to the substance of the amendment establish that they consider the matter ripe for summary judgment.

Section 226.8(b)(1) requires disclosure of "the date on which the finance charge begins to accrue if different from the date of the transaction." Defendants signed the Agreement on April 4, 1979. By interrogatory, plaintiff stated that the finance charge began to accrue on April 5. Thus, defendants contend that plaintiff violated § 226.8(b)(1) by failing to disclose that the finance charge began to accrue one day after the transaction was consummated.

Notwithstanding our recognition that TILA and the regulations should be liberally construed in favor of the consumer, *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973), we think that to do so in a manner heedless to the spirit and purpose of the legislation would serve no useful purpose. The express purpose of TILA is to enable the consumer "to compare more readily the various credit terms available to him." 15 U.S.C.A. § 1601. We are unable to perceive how the one day lapse in the accrual of the finance charge can be deemed anything but *de minimis.* In addition, the finance charge began to accrue after the Agreement was executed, thereby inuring to the benefit of defendants. The language of the regulation suggests that the drafters viewed accrual of the finance charge on the same date as the transaction as the general rule, for in that event disclosure is not required. We believe that it was not the Board's intention to impose upon creditors the unnecessary hardship of disclosing that the finance charge would begin to accrue after the date of the transaction when such an occurrence would work to the advantage of the consumer. Summary judgment on this counterclaim is granted in favor of plaintiff.

5. Summary of rulings.

In light of the foregoing, defendants' motion to dismiss based upon RISA will be overruled; defendants' motion for summary judgment on plaintiff's first claim for relief (reclamation) will be overruled; defendants' motion for summary judgment on plaintiff's second claim for relief (denial of dischargeability) will be granted; defendants' motion for summary judgment on plaintiff's third claim for relief (objection to discharge) will be granted; defendants' motion for summary judgment on its first counterclaim based upon TILA, 12 C.F.R. § 226.8(a) will be overruled and plaintiff's motion for summary judgment on this counterclaim will be granted; summary judgment will be granted in favor of plaintiff on defendants' fourth counterclaim based upon TILA, 12 C.F.R. § 226.8(b)(1). Defendants' request for oral hearing is denied.