In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3092

Diane Janikowski,

Plaintiff-Appellant,

v.

Lynch Ford, Incorporated, Lynch Chevrolet,
Incorporated, Frank J. Lynch Incorporated, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 8111--Suzanne B. Conlon, Judge.

Argued February 8, 2000--Decided April 21, 2000

Before Cudahy, Manion, and Diane P. Wood, Circuit
Judges.

Manion, Circuit Judge.  Diane Janikowski entered
into a contract with Lynch Ford, Inc., to
purchase an automobile from Lynch Ford contingent
on her obtaining 5.9% APR financing. Lynch Ford
was unable to arrange financing at that rate, but
instead of canceling the contract, Janikowski
entered into a new contract agreeing to purchase
the car at an APR of 11.9%. However, she later
decided to sue Lynch Ford, Inc. and four other
car dealerships owned by Lynch, alleging that the
defendants violated the Truth In Lending Act
("TILA") and the Illinois Consumer Fraud Act
("ICFA"), and were unjustly enriched because,
while they originally disclosed the APR at 5.9%,
she ultimately became liable to pay 11.9%, and
because they failed to state that the 5.9% rate
was an estimate. The district court dismissed the
other Lynch dealerships and granted Lynch Ford
summary judgment. Janikowski appeals and we
affirm.

I.  Background
  On November 10, 1998, Diane Janikowski went to
Lynch Ford, Inc. to purchase a new car; she
decided on a 1999 Ford Escort. The sales
representative, Eric Vates, told Janikowski that
he would try to get her 5.9% APR financing, but
that due to the late hour in the day he could not

assure her that a financing institution would accept her loan at that rate. Janikowski nonetheless signed a Vehicle Purchase Order agreeing to buy the Ford Escort, and a Retail Installment Contract which listed the APR at 5.9%. Paragraph 9 of the Purchase Order also provided: "If financing cannot be obtained within 5 business days for Purchaser according to the proposals in the retail installment contract executed between Seller and Purchaser, either Seller or Purchaser may cancel the Agreement shown on the face of this Order and the retail installment contract."

Even though Janikowski's duty to purchase the car was conditional, she drove the Escort home that night. The next day, Vates called Janikowski and told her that her loan had been approved, but at an 11.9% interest rate. Janikowski returned to the dealership that evening, traded in her old car, and signed a new Purchase Order and Retail Installment Contract, agreeing to purchase the Escort at an APR of 11.9%.

About one month later, Janikowski filed suit against Lynch Ford and four other car dealerships owned by Lynch. Her suit alleged that the defendants violated TILA because they disclosed a 5.9% APR, while she became liable to pay an APR of 11.9%, and that the defendants' failure to mark the 5.9% rate as an estimate also violated TILA./1 Additionally, Janikowski contends that the defendants' conduct violated the Illinois Consumer Fraud Act and constituted unjust enrichment. Janikowski moved to certify her case as a class action. The district court denied her request to certify, dismissed the other Lynch-owned dealerships, and granted Lynch Ford summary judgment. Janikowski appeals.

II.  Analysis

On appeal, Janikowski contends that the district court erred in granting Lynch Ford summary judgment, in dismissing the other Lynch dealerships, and in denying her request for class certification. We begin with the district court's decision granting Lynch Ford summary judgment. We review this determination de novo, applying the rotely recited summary judgment standard: Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law./2

TILA requires that all retail installment contracts provide accurate disclosures. Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285 (7th Cir. 1997). TILA also mandates certain disclosures, including the contractual APR, 15 U.S.C. sec. 1638(a)(4), and these disclosures

must be in writing. The regulations further explain that the disclosures must "reflect the terms of the legal obligations of the parties," 12 C.F.R. sec. 226.17(c)(1), and must be given before the "consumer becomes contractually obligated on a credit transaction." 15 U.S.C. sec. 1638(c); 12 C.F.R. sec. 226.2(a)(13).

Janikowski argues that Lynch Ford violated TILA because, although Lynch Ford disclosed an APR of 5.9%, she was ultimately required to pay an APR of 11.9%. In making this argument, however, Janikowski does not focus upon what really happened: She entered into two contracts, each of which disclosed the relevant (albeit different) APR. Before she signed the contract on November 10, 1998, Lynch Ford disclosed a contractual rate of 5.9%. That disclosure reflected the terms of her legal obligations, as required by regulation. 12 C.F.R. sec. 226.17(c)(1). She was not legally obligated to purchase the Escort at any rate other than 5.9%. The next day, after Janikowski learned that she had been denied financing at 5.9%, the November 10, 1998 contract was canceled. She then entered into a new contract, which disclosed an 11.9% APR. Therefore, even though Janikowski did not eventually obtain financing at 5.9%, Lynch Ford did not violate TILA because it accurately disclosed her legal obligations under the two contracts./3

Alternatively, Janikowski argues that Lynch Ford violated TILA because it failed to disclose that the 5.9% APR was an estimate. Section 226.17(c)(2) of the federal regulations provides that: "If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate." 12 C.F.R. sec. 226.17(c)(2). Janikowski contends that Lynch Ford's failure to label the 5.9% rate as an estimate violated section 226.17(c)(2). However, contrary to Janikowski's position, the 5.9% APR was not an estimate--it was the contractual rate, albeit a condition to the parties' duty to perform. It was an accurate disclosure for that contract, and the 5.9% rate did not and could not vary under its terms. If the financing condition had been satisfied, Janikowski would be able and obligated to purchase the car at 5.9%. However, when Janikowski did not receive approval of financing at 5.9%, she could have canceled the contract and refused to purchase the Escort. Either way, the disclosed rate was a set rate, not an estimate.

Janikowski also argues that Lynch Ford engaged in a practice of "spot delivery" and that this

violates TILA. According to Janikowski, "spot delivery" involves (1) the entering into a sales contract with a consumer at a low interest rate when the seller knows the consumer will not qualify for that rate; (2) followed by the seller giving the consumer possession of the car, and accepting the consumer's trade-in; (3) and finally, the late notification to a consumer that their financing has been denied and that they must enter into a new contract, which the consumer will do because they no longer have their trade-in and because they have become attached to their new car./4

There are two primary problems with Janikowski's theory--factual and legal. Factually, the undisputed evidence in this case shows that while Janikowski drove the new Ford Escort home on the evening of November 10, 1998, she had not yet delivered her used car as a trade-in. In fact, she did not deliver her trade-in until the next day, after she had learned that she had been denied financing at 5.9% and after (or at the same time) she entered into the new contract at 11.9%. So the trade-in aspect of the so-called "spot delivery" practice is missing. This quick turnaround time also negates the premise in the "spot delivery" scenario that the consumer will have become attached to their new car and thus willing to purchase it at a higher interest rate; in this case Janikowski had possession of the new car for less than twenty-four hours. And contrary to the hypothetical of "becoming attached," also hypothetically she could have driven the car hundreds of miles and returned it the next day and kept her current car, no strings attached.

Also missing from the "spot delivery" scenario is the knowledge component. While Janikowski contends that Vates knew she would not receive financing at 5.9%, the record does not support this contention. Rather, Vates' uncontradicted testimony is that he had reviewed Janikowski's credit history and concluded she had a credit rating of "2," and that individuals with a credit rating of 0, 1, or 2 qualified for 5.9% financing. The financing company later rated Janikowski at a "4," and as a result she only qualified for financing at 11.9%. But this does not negate Vates' testimony that he believed she rated a "2," that he believed that she may have obtained financing at 5.9%, and that even after the financing company rated her as a "4," the financing company, on its own initiative, could have altered that rating over the weekend after a personal representative reviewed Janikowski's application. (Vates also told Janikowski--at least twice--that he could not guarantee that she would obtain financing at 5.9%.) Nor can Janikowski create an issue of fact as to Vates' knowledge by presenting "expert testimony" that

"Lynch deliberately defrauded Ms. Janikowski by misrepresenting its ability to obtain financing at the rate quoted." There is no evidence that Vates knew Janikowski would not obtain financing, and on which the expert could base his opinion./5 See Harmon v. OKI Systems, 115 F.3d 477, 480 (7th Cir. 1997) ("Without any evidence in the record to support that (legal) conclusion, [expert's] statement simply is not enough to get . . . to the jury."). Thus, the "actual knowledge" element of the "spot delivery" theory is also missing.

Beyond these sundry factual problems, Janikowski's "spot delivery" theory fails legally because this practice does not violate TILA. That Act requires truthful disclosures of a consumer's legal obligations, and as discussed above, Lynch Ford satisfied that statutory obligation. Therefore, even if the factual premises of the so-called "spot delivery" theory were present, this situation would not violate TILA./6

Janikowski also contends that Lynch Ford violated the ICFA. Under Illinois law, failing to disclose the financing terms of a consumer contract violates the ICFA. Grimaldi v. Webb, 668 N.E.2d 39 (Ill. App. 1996). However, as discussed in the context of TILA, Lynch Ford did not fail to disclose, or misstate the financing terms. Therefore, because in this case--unlike Grimaldi--Lynch Ford disclosed the financing terms, Janikowski's ICFA claim fails as well./7

Because Lynch Ford disclosed the APRs for which Janikowski was legally obligated before the consummations of both the November 10 and November 11 contracts, it did not violate TILA or the ICFA. We therefore AFFIRM./8


/1 Janikowski alleged in her complaint that Lynch Ford disclosed an APR of 5.4%, but the Retail Installment Contract disclosed the APR at 5.9%. On appeal she does not contend that the contract improperly listed 5.9% as the rate which was disclosed to her before she signed the contract. Therefore, we will use 5.9% as the relevant rate.

/2 On appeal, Janikowski contends that we should reverse the district court's decision because it failed, in part, to apply Local Rule 12N, which provides that if the party opposing summary judgment does not object to the proposed findings of fact, the court should accept those facts as admitted. However, Janikowski fails to even recite the proposed findings of fact that the district court allegedly failed to accept as truth. She also fails to discuss at all how those

facts, if treated as admitted, would alter the district court's decision. Therefore, she has waived this argument.

/3 As noted earlier, under the first contract Janikowski was not legally obligated to purchase the Escort at any rate other than 5.9%. In fact, Lynch Ford was at risk when it permitted her to take possession of the new car before financing was approved. Had Janikowski decided not to sign the revised 11.9% contract, Lynch could technically have been stuck with a "used" car causing immediate depreciation. So while the 5.9% contract was indeed an attractive enticement to Janikowski, it was also a risk to Lynch if Janikowski was not satisfied with the 11.9% alternative.

/4 Janikowski seems to take this sequencing from a newspaper article. J. Dirks, "Scott's Oregon AG Sign Agreement," The Columbian (Vancouver, WA), Mar. 5, 1998, sec. D 1.

/5 On appeal, Janikowski asserts in her "statement of facts" that Vates "knew that Janikowski would not qualify for, or receive, financing with a 5.9% APR prior to his disclosure of that rate to Janikowski on November 10, 1998." In support of this "fact," Janikowski cites to Lynch Ford's "Reply/Response to Plaintiff's Rule 12(N)/12(M) Statement of Additional Facts," in which Lynch Ford denied this proposed fact. At best, this citation indicates that a factual dispute exists. But when we look to the underlying record--which Janikowski did not cite in her appellate brief-- it becomes clear that there is no evidence that Vates knew that Janikowski would not obtain financing at 5.9% because there is nothing to support the expert's conclusion that Vates had this knowledge.

/6 Additionally, the underlying premise of the "spot theory"--that a consumer is unfairly put at risk of being denied financing--is also misplaced because as explained supra at n.3, the dealership has an equal, if not higher risk.

/7 While Janikowski's complaint also alleged a claim of unjust enrichment, on appeal Janikowski did not present any legal argument supporting this theory. Therefore, that claim was waived. LINC Finance Corp. v. Onwuteaka, 129 F.3d 917, 921 (7th Cir. 1997).

/8 Because the district court properly granted Lynch Ford summary judgment, we need not consider whether the district court erred in dismissing the other Lynch-owned dealerships or in denying class certification.