In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1032

MARY A. SPEARMAN,

*Plaintiff-Appellant*,

*v.*

TOM WOOD PONTIAC-GMC,
INCORPORATED,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 C 1340—**John D. Tinder**, *Judge*.

ARGUED SEPTEMBER 10, 2002—DECIDED DECEMBER 3, 2002

Before COFFEY, ROVNER and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. Mary Spearman purchased a
car from Tom Wood Pontiac-GMC, Inc. ("Tom Wood"), and
financed the purchase through the dealership. The Truth
in Lending Act ("TILA") requires that certain informa-
tion be disclosed to a consumer in writing in a form the
consumer may keep prior to the consummation of a credit
transaction. Spearman concedes that Tom Wood provided
the necessary disclosures and that the disclosures were
in writing. She sued the dealership, however, asserting
that the disclosures were not in a form she could keep
and that the disclosures were not made prior to the con-
summation of the transaction. After considering Spear-

man's deposition, the sole piece of evidence submitted in cross motions for summary judgment, the district court granted judgment in favor of Tom Wood. We affirm.

## I.

In July 1999, Spearman went to the Tom Wood dealership and discussed the purchase of a car with a salesman. Within a few days of August 26, 1999, she executed a "Retail Installment Contract and Security Agreement" ("Contract") in connection with the purchase of a 1997 Chrysler Sebring from Tom Wood. The Contract contained a section dedicated to notices required by TILA. Spearman does not dispute that the section of the Contract titled "Truth in Lending Disclosures" contained all of the disclosures required by TILA. The Tom Wood salesman presented the Contract to Spearman in quadruplicate form, sealed across the top. The pages of the form were not labeled to indicate the intended recipient of each copy. One of the four copies was intended for Spearman, and as soon as she reviewed and signed the Contract, the salesman removed Spearman's copy and handed it to her. He removed the copy by tearing along a perforation at the top of the document. Spearman was unaware that one of the four copies was intended for her to keep until the salesman handed a copy to her. She testified in her deposition that she would have been uncomfortable tearing out a page and keeping it for herself before signing. The Tom Wood salesman did not give Spearman any other copy of the disclosures before presenting her with the Contract in the form we have described. Before Spearman signed the Contract, the Tom Wood salesman told her that he would try to obtain a better financing rate for her and that if he were able to do so, she could simply execute a new Contract. The salesman did not subsequently offer Spearman a lower financing rate. Spearman conceded that

she had no intention of shopping around for a better rate herself. However, she later testified that she would not have signed the Contract had she known she would be held to the rate specified in the Contract.

Spearman sued Tom Wood pursuant to 15 U.S.C. § 1601, et seq. and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.17, for failing to provide the necessary TILA disclosures in writing, in a form the consumer may keep, prior to consummation of the transaction. The district court initially granted judgment in favor of Spearman, finding that the deal was consummated the moment Spearman signed the Contract and that the salesman did not give her a copy she could keep until after signing. Tom Wood moved for reconsideration and the district court reversed course, this time granting judgment in favor of Tom Wood. The court determined that providing the disclosure contemporaneously with consummation was sufficient under TILA and Regulation Z, and that there was no meaningful distinction between tearing off a copy before or after the consumer signed the document. The district court also found that Spearman suffered no actual damages as a result of any purported violation of TILA because she conceded she had no intention of shopping around for a better rate. The court found that our decision in *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir. 2000), *cert. denied*, 531 U.S. 820 (2000), precluded Spearman from receiving statutory damages for a violation of section 1638(b)(1). The court therefore held that, because she suffered no damages, Spearman could not prevail on her claim even if she proved a violation of TILA and Regulation Z. The court granted judgment in favor of Tom Wood. Spearman appeals.

## II.

We review the district court's grant of summary judgment *de novo. Janikowski v. Lynch Ford, Inc.*, 210 F.3d

765, 767 (7th Cir. 2000). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(c). The parties here agree on the salient facts. A Tom Wood salesman handed Spearman a multi-part form containing the required disclosures. She was unaware that one of the copies was intended for her to keep. She reviewed the Contract, signed it, and the salesman tore out her copy and handed it to her. The only question is whether Tom Wood's actions conformed to the highly technical requirements of TILA as expressed in Regulation Z.

TILA requires that a creditor disclose certain facts "before the credit is extended." 15 U.S.C. § 1638(b). The Federal Reserve Board has issued regulations implementing this statute (often referred to as "Regulation Z") and has also issued an Official Staff Commentary providing further explanation. *See* 12 C.F.R. §§ 226.17 and Supp. I; *Clay v. Johnson*, 264 F.3d 744, 748 (7th Cir. 2001) (the Federal Reserve Board's official staff commentary to Regulation Z is dispositive in TILA cases unless the commentary is demonstrably irrational). The regulations provide, in relevant part:

> The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep.

12 C.F.R. § 226.17(a). As for the timing of the disclosures, the regulations provide that "[t]he creditor shall make disclosures before consummation of the transaction." 12 C.F.R. § 226.17(b). The Commentary to the regulations clarifies that the disclosures may appear on the same document with the credit contract (as happened here) so long as they are segregated from other information appearing on the form. The Commentary also explains the timing requirement of the statute in greater detail:

> As a general rule, disclosures must be made before "consummation" of the transaction. The disclosure need not be given any particular time before consummation except in certain mortgage transactions[.] . . .

12 C.F.R. § 226, Supp. I, at 17(b). According to the Commentary, state law governs in determining when the deal is consummated. Consummation generally refers to the time when the consumer becomes contractually obliged on the credit arrangement. 12 C.F.R. § 226, Supp. I, at 2(a)(13). The Commentary specifies that a credit transaction is not consummated at the time the underlying sale is final but rather at the time the consumer becomes obligated to accept a particular credit arrangement. *Id.*; *Janikowski*, 210 F.3d at 767 (TILA disclosures must be given before the consumer becomes contractually obligated on a credit transaction).

Spearman does not object to the content or placement of the disclosures, claiming only that they were not provided in a form she could keep before consummation of the transaction. In particular, she complains that she did not know she could keep a copy of the disclosures prior to consummation, that she did not feel comfortable tearing off a copy of the unlabeled, bound, multi-page packet, and that Tom Wood did not offer her the single page copy of the disclosures until after she signed the Contract. Spearman objects that the district court opinion places the burden on the consumer to know her rights and affirmatively take steps to assure the creditor's compliance in contravention of the transition in Congressional policy from "Let the buyer beware" to "Let the seller disclose." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377 (1973). Spearman argues that she was deprived of the opportunity to shop around for a better deal with Tom Wood's deal in hand for comparison.

For the sake of clarity, we will address the two main parts of Spearman's argument separately. Parsing out

the requirements of the statute and regulations, the disclosures must be made (1) before consummation and (2) in a form the consumer may keep. As we noted above, the disclosures may be made in the same document as the credit agreement so long as they are properly segregated. Moreover, the disclosure need not be given any particular time before consummation. Thus, the creditor may fulfill the timing requirements of TILA and Regulation Z by providing the consumer with a copy of the contract containing the appropriate disclosures moments before the consumer signs the contract. Tom Wood fulfilled this timing requirement by giving Spearman four copies of the disclosures in the form of the four-part Contract moments before she signed.

Spearman's complaint is that the disclosures were not *in a form she could keep* until after she signed the Contract and her copy was separated out. But a commonsense understanding of the transaction defies this contention. The Tom Wood salesman handed Spearman four copies of the disclosures before consummation of the deal. Spearman testified that she reviewed the Contract before signing it and that no one told her she could not keep it. Indeed, Spearman has presented no evidence that she was not free to keep all or part of the packet the salesman handed her. At that point, she was in physical possession of all four copies and there is no evidence in the record that the salesman would have taken them back. Although Spearman testified that she did not know she could keep this document (or any part of it) and that she felt some discomfort over tearing out a page, the only evidence in the record demonstrates that her reluctance to keep the document given to her was idiosyncratic. TILA does not require a creditor to explain a borrower's rights in this situation. Under Spearman's view of the evidence, the salesman would have been required to hand over the disclosures and then say, for example, "This is yours to keep." TILA imposes no such obligation.

Before signing, the evidence shows only that the entire packet was Spearman's to keep. The subsequent acts of the salesman demonstrated that, after signing, at least one copy of the document was in fact Spearman's to keep. After Spearman signed the Contract, the salesman removed the three copies for the dealership and again handed Spearman her copy of the document. In other words, the Tom Wood salesman gave Spearman the required disclosures and there is no evidence he would have taken them back if she had declined to sign at that time. There was nothing so unusual about the form of the disclosure that an average consumer would not understand he or she could keep the packet, even without signing. The document had been filled out to reflect the buyer, the seller, the specific automobile and all of the financial terms relating to the sale. Once filled out, the form was useless for any transaction other than the one proposed with Spearman. Moreover, the disclosures were not made, for example, on a large sign posted in the dealership's business office or in a bound book or in some other form that an average consumer would be reluctant to keep. Rather, the disclosures were contained on a four-part carbonless form much like forms that consumers encounter every day, when placing an order, for example. The fact that multiple copies were available would, we think, make an average consumer *less* reluctant to take a copy (or even the whole packet) for herself. Spearman herself provides the most likely explanation for why she did not take a copy of the Contract without signing. She had no intention of shopping around for better rates. Tom Wood did all it was required to do when it gave Spearman a copy of the disclosures in a form she could keep before she signed the credit deal.

We might have a different case if Spearman tried to keep the four-part form and the salesman told her she could not, or if the salesman attempted to repossess all

or part of the packet. The only evidence in the record, though, indicates that the dealership handed over a document Spearman could keep. Because we find that Tom Wood did not violate TILA or Regulation Z, we need not address Spearman's other argument that she is entitled to statutory damages even though she admittedly suffered no actual damages because she had no intention of shopping for a better deal. We accordingly decline to reconsider our ruling in *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir. 2000).

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*