**Emily RUCKER, Plaintiff,**

v.

**SHEEHY ALEXANDRIA, INC. d/b/a Sheehy Honda Defendant.**

**No. CIV.A. 02–466–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 13, 2003.

Alexander Hugo Blankingship, III, Blankingship & Associates P.C., Alexandria, VA, for Plaintiffs.

Brad Darin Weiss, Charapp Deese & Weiss L.L.P., Washington, DC, Jodi Victoria Zagorin, Hudgins Law Firm, P.C., Alexandria, VA, for Defendants.

## *ORDER*

ELLIS, District Judge.

The matter is before the Court on defendant's motion to alter or amend judgment, pursuant to Rule 59(e), Fed.R.Civ.P., and defendant's motion for relief from judgment pursuant to Rule 60(b). Through these motions, defendant, an automobile dealer, asks for a reconsideration of the October 9, 2002 Order and the October 16, 2002 Memorandum Opinion, in particular of the finding that the defendant understated the annual percentage rate of inter-

est ("APR") in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, by calculating the APR on the basis of the date of a backdated agreement rather than the date that the transaction was consummated. For the reasons that follow, defendant's request for reconsideration is inappropriate and without merit, and is therefore denied.

## I.

The relevant facts, which are not disputed, are recounted in detail in the Memorandum Opinion[1] and are only briefly summarized here. Plaintiff Emily Rucker purchased a car in April 2001 from defendant Sheehy Alexandria, Inc. ("Sheehy") and drove it away on that date. On April 3, 2001, the parties executed an initial agreement, including a buyer's order, a retail installment sales contract (RISC), and a bailment agreement. The April 3, 2001 agreement was conditioned upon financing being obtained from a third party under the terms of the RISC within five days. No such financing was obtained, and as a result the original agreement became null and void after five days. Nonetheless, Sheehy did not immediately demand that Rucker return the car.

On April 13, 2001, Sheehy received a counteroffer approving financing on terms less favorable to Rucker, and Rucker was asked to return to the dealership. At the dealership, the parties reached a second agreement. This agreement required an additional $1000 down payment from Rucker, doubling the original down payment. The April 13 agreement financed a smaller amount for a shorter term at a stated APR of 24.95%, an increase of 2% over the originally proposed 22.95% rate.[2] The April 13 buyer's order and RISC were backdated to April 3, 2001, the date of the original and now voided agreement and the date on which Rucker took possession of the car. Significantly, the 24.95% APR disclosed on the April 13 RISC was calculated based on an interest accrual date of April 3, 2001, the nominal date of the agreement, not April 13, 2001, the actual date that the agreement was consummated. By contrast, when calculated with the April 13, 2002 interest accrual date, the APR of the second agreement was 25.35%, an increase of .4% over the disclosed figure.

On April 1, 2002, Rucker filed a six count complaint which included a claim that Sheehy had improperly calculated the APR on the April 13 RISC in violation of TILA, 15 U.S.C. § 1601 *et seq.* On October 9, 2002, Rucker was granted summary judgment on the TILA claim, on ground that the APR was improperly calculated by using an interest accrual date prior to the date of the consummation, in violation of TILA and its implementing regulations. Sheehy challenges this judgment in the instant motion.

## II.

 Sheehy seeks relief under Rule 59(e) and Rule 60(b), Fed.R.Civ.P. With regard to Rule 59(e), it is well established that a district court may grant a motion to alter or amend a judgment only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403

---

1. *See Rucker v. Sheehy Alexandria, Inc.*, 228 F.Supp.2d 711, 713–15 (E.D.Va.2002) (Memorandum Opinion).

2. For a more detailed comparison of the two offers, *see Rucker*, 228 F.Supp.2d at 714.

(4th Cir.1998).[3] Here, Sheehy seeks relief under the third ground, arguing that the result in this case was clearly erroneous or manifestly unjust. Sheehy also seeks relief under the catchall provision of Rule 60(b)(6), under which a party make seek relief from a "final judgment, order or proceeding for ... any other reason justifying relief from operation of the judgment." Rule 60(b), Fed.R.Civ.P. A motion for relief under rule 60(b) must demonstrate (i) that the motion is timely, (ii) that there is a meritorious defense to the challenged order, and (iii) that setting aside the order will not unfairly prejudice the opposing parties. *See Bright v. NOR-SHIPCO,* 187 F.R.D. 536, 539 (E.D.Va. 1998). To prevail on a motion under 60(b)(6), a movant must also demonstrate "extraordinary circumstances." *Id.* In this regard, Sheehy argues again that the result reached in this case is manifestly unjust.

In its motions for relief under Rule 59(e) and 60(b) Sheehy argues that the April 13 transaction, though consummated by the parties on April 13, "related back" to an "effective date" of April 3 by agreement of the parties. Thus, Sheehy contends, the disclosed APR figure was properly calculated using the April 3 effective date. In this regard, the law is clearly to the contrary, as is reviewed below and as was fully discussed in the Memorandum Opinion. *See Rucker,* 228 F.Supp.2d at 715–719.

■■■ TILA requires lenders to make certain prominent disclosures when extending credit, including the APR. *See* 15 U.S.C. § 1638(a); *Rucker,* 228 F.Supp.2d at 715. The method for calculating the APR is detailed in Regulation Z, which was promulgated by the Federal Reserve pursuant to TILA. *See* 12 C.F.R. § 226 app. J(b); *Rucker,* 228 F.Supp.2d at 715, 717. According to the current version of Regulation Z, "[t]he term of the transaction begins on the date of its consummation, except that if the finance charge or any portion of it is earned beginning on a *later* date, the term begins on a later date." *Id.* at § 226 app. J(b)(2) (emphasis added). As detailed in the Memorandum Opinion, this language indicates that, for the purposes of TILA's required disclosures, the APR may not be calculated based on a term beginning prior to the consummation date. *See Rucker,* 228 F.Supp.2d at 717.[4] Consummation, in turn, is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13); *see Rucker,* 228 F.Supp.2d at 716; *Cades v. H & R Block, Inc.,* 43

---

**3.** Rule 59(e) motions must be filed within ten days of entry of judgment. *See* Rule 59(e), Fed.R.Civ.P. In this case, the relevant order was issued more than three months ago. However, Sheehy argues that a Rule 59(e) motion is timely because no final judgment in the form of a separate document has been entered, as plaintiff's motion for attorney's fees is still pending. In any event, Sheehy's arguments are also presented under the Rule 60(b) motion, which need only be "made within a reasonable time."

**4.** This conclusion is supported by a comparison of the current version of Regulation Z with the previous version, which allowed for earlier interest accrual dates but required that the date be disclosed if different from the date of the transaction. *See id.* at 717 n. 8; *Krenisky v. Rollins Protective Services Co.,* 728 F.2d 64, 67 n. 3 (2nd Cir.1984).

As noted in the Memorandum Opinion, interest accrual dates that predate the consummation of the transaction lower the disclosed APR, and thus may be used strategically and deceptively to understate the APR. *See Rucker,* 228 F.Supp.2d at 717–19. Thus, preventing the use of earlier interest accrual dates supports the goals of TILA by fostering "meaningful disclosure of credit terms" and "protect[ing] the consumer against inaccurate and unfair credit billing ... practices." *See id.* at 717; 15 U.S.C. § 1601(a).

F.3d 869, 876 (4th Cir.1994); *Harper v. Lindsay Chevrolet,* 212 F.Supp.2d 582, 587 (E.D.Va.2002).

 Here, it is clear that the consummation date of the second and governing agreement between the parties is April 13, when Rucker signed the agreement and became contractually obligated on its terms. *See Rucker,* 228 F.Supp.2d at 716. Thus, the APR disclosed on the April 13 agreement was improperly calculated because it was based on a term beginning April 3, which is neither the consummation date of the April 13 agreement nor an effective date *later* than the consummation date. *Id.* at 717. Furthermore, since the resultant understatement of the APR by .4% is outside the one-eighth of one percent tolerance allowed by TILA, this error resulted in a violation of TILA. *See* 15 U.S.C. § 1606(c); *Rucker,* 228 F.Supp.2d at 717.

Despite Sheehy's adamant assertions that the calculation of the APR based on the April 3 date was proper, Sheehy does not directly challenge the Memorandum Opinion's conclusion regarding the effect of Regulation Z. Indeed, Sheehy cites the relevant provision of Regulation Z as well as the *Krenisky* case, which held that Regulation Z precludes the use of an earlier effective date when calculating an APR. *See* 12 C.F.R. § 226 app. J(b)(2); *Krenisky v. Rollins Protective Services Co.,* 728 F.2d 64, 67 n. 3 (2nd Cir.1984). Nonetheless, Sheehy contends that the use of April 3 in calculating the disclosed APR was proper because the parties agreed that April 3 was the effective date of the agreement. This argument simply cannot be squared with the requirements of Regulation Z.

As an initial matter, Sheehy plausibly contends that the record indicates that the parties agreed that the terms of the April 13 agreement would "relate back" to the April 3 date when the original and now voided agreement was signed, and when Rucker took possession of the car. Sheehy notes that the second RISC signed by Rucker on April 13 was clearly dated April 3,[5] and therefore contends that, even though Rucker claims not to have read the contract before signing it, she may be held to have agreed to its terms. *See Browne v. Kline Tysons Imports, Inc.,* 190 F.Supp.2d 827, 830 (E.D.Va.2002) ("One who signs a contract is presumed to know and assent to the terms contained therein."). Thus, the question whether the parties agreed to an April 3 effective date for the April 13 agreement would be, at the least, a matter of material factual dispute, were it relevant to the finding of a TILA violation here.

Yet, even assuming that the parties agreed on April 13 to a retroactive April 3 effective date, it does not follow that April 3 may be used to calculate the APR for the purposes of the required APR disclosure under TILA. Indeed, the language of Regulation Z holds quite clearly to the contrary. As noted above and as is clearly discussed in the Memorandum Opinion, the APR must be calculated based on a term beginning on the consummation date, "*except* if the finance charge or any portion of it is earned beginning on a *later* date," in which case the "term begins on a later date." *See* 12 C.F.R. 226 app. J(b)(2) (emphasis added); *See Rucker,* 228 F.Supp.2d at 717. Thus, the regulations clearly contemplate that parties might enter into a contract in which the date that finance charges begin to accrue, *i.e.* the

---

5. The second RISC contains the typed date "04/03/2001" on the bottom portion of the form, immediately after Rucker's signature. It does not, however, also include the date "[a]t the top, front-side of the RISC" as Sheehy asserts in its brief.

effective date, differs from the consummation date. Yet, under the current version of Regulation Z, the effective date may not be substituted for the consummation date in determining the term for the APR calculation unless the effective date is later; such is not the case here. In other words, Sheehy was not free under Regulation Z to substitute the effective date for the consummation date in this case, regardless of how logical such a substitution might otherwise appear.

Furthermore, Sheehy cannot satisfy Regulation Z by contending that the alleged April 3 effective date of the April 13 agreement should also be deemed the *consummation* date for that agreement. Sheehy's current stance in this regard is confused, perhaps deliberately so. Thus, Sheehy contends at the outset that there were "two consummations [sic]" dates for the two separate agreements, but only one "effective date" of April 3. Sheehy also notes that Rucker did not become "financially obligated" on the April 13 agreement until she "received the required disclosures and signed the second RISC" on April 13. Thus, Sheehy appears to concur with the Memorandum Opinion that the April 13 agreement was consummated on April 13, regardless of the backdating of that agreement to April 3.[6] Indeed, such a conclusion is unavoidable given the plain language of TILA and Regulation Z and the facts of this case. *See Rucker*, 228 F.Supp.2d at 716. Yet, in describing the

two agreements, Sheehy attempts to finesse the question of the consummation date for the April 13 agreement, referring initially only to that agreement's "effective date" of April 3, then claiming that the April 13 agreement "related back" to the original April 3 agreement.[7] Similarly, in arguing that the disclosures were timely, Sheehy never explicitly states that the April 13 agreement was not consummated until April 13. Ultimately, however, Sheehy contends that because Rucker agreed to the April 3 effective date, "Sheehy correctly calculated the accrual and consummation date from April 3, 2001," or, put differently, that "the APR was properly calculated to accrue from April 3, 2001 because that is the date that Plaintiff agreed to be bound to the terms in the second RISC."

■ Sheehy further attempts to blur the distinction between the effective date and the consummation date as they pertain to the calculation of the APR under TILA and Regulation Z. Thus, for example, Sheehy attempts to apply state law regarding an *effective* date for a contract agreed upon by the parties for the purposes of determining the *consummation* date of a contract. Sheehy correctly points out that the date of consummation is determined pursuant to state law, because the question of "[w]hen a contractual obligation on the consumer's part is created" is governed by state law. *See* Official

---

6. Of course, if April 3 were deemed the consummation date of the April 13 agreement, this would result in a different TILA violation; if the agreement were deemed consummated on April 3, it is clear that the disclosures, which were not made until April 13, would be untimely. *See* TILA, 15 U.S.C. § 1638(b)(1) (stating that disclosures must be made "before credit is extended"); Regulation Z, 12 C.F.R. § 226.17 (stating that disclosures must be made "before consummation of the transaction").

7. Thus, Sheehy declares: "The first RISC was consummated on April 3, 2001 with an effective date of April 3, 2001. The second RISC, signed on April 13, 2001, was effective April 3, 2001 and related back to the original agreement." It is not clear how the April 13 agreement can "relate back" to the April 3 agreement, as the agreements contained different terms with regard to the amount financed, the interest rate, the length of the term, the price of the car, and the service warranty.

Staff Commentary on Regulation Z § 226.2(a)(13). Yet, after citing this commentary, Sheehy does not proceed to discuss state law concerning the timing of the formation of the contract; rather, Sheehy turns to state law regarding the validity of agreements that apply a contract's terms retroactively, *i.e.*, agreements concerning the effective date of the contract. Thus, Sheehy argues that "the APR was properly calculated to accrue from April 3, 2001 because that is the date that Plaintiff agreed to be bound to the terms in the second RISC." Yet, regardless of the validity under Virginia law of the parties determination that the April 13 agreement would be retroactively effective as of April 3, it is the state law regarding the time at which this agreement was consummated, that is, the time that at which the contract was formed and Rucker became obligated its terms, that determines the consummation date for the purposes of TILA and Regulation Z. In this regard, it is undisputed that Rucker signed and became bound by the April 13 agreement, retroactive or not, on April 13.

In sum, by signing the backdated agreement, Rucker may have agreed to be bound retroactively to the terms of the agreement as of April 3 as Sheehy now contends; yet, this does not alter the fact that the consummation date of this agreement was April· 13, the date on which Rucker became obligated to those retroactive terms. Sheehy's attempts to blur the distinction between the effective date and the consummation date are of no avail.

Regulation Z, by contrast, is quite clear in this regard, and bars the substitution of an effective date for the consummation date in this instance, because the effective date predates the consummation date. *See Rucker,* 228 F.Supp.2d at 717. Thus, Sheehy's arguments concerning the allegedly agreed upon April 3 effective date do not show that the Memorandum Opinion was erroneous in its application of Regulation Z to this case. To the contrary, it is Sheehy's arguments that ignore or contradict the plain language of Regulation Z.[8]

Sheehy also advances a number of unpersuasive arguments that the result reached in this case is manifestly unjust, and by implication, perhaps, that the relevant provision of Regulation Z is unjust as well.

First, Sheehy contends that the result reached here rewrites the April 13 contract between the parties, thus violating the parties' freedom of contract and Virginia state law. According to Sheehy, "the judgment states that parties to a retail installment sales contract cannot agree on a vital provision of the effective date of the agreement." This is hardly the case. TILA is a technical statute requiring that lenders make certain prominent disclosures when extending credit, and Regulation Z specifies how those figures, including the APR, must be disclosed. *See* 15 U.S.C. § 1638(a); *See* 12 C.F.R. § 226 app.· J(b)(2); *Rucker,* 228 F.Supp.2d at 715. Yet, TILA and Regulation Z do not

---

**8.** The cases relied on by Sheehy are not to the contrary. *See Janikowski v. Lynch Ford, Inc.,* 210 F.3d 765 (7th Cir.2000); *Hodges v. Koons Buick Pontiac GMC, Inc.,* 180 F.Supp.2d 786 (E.D.Va.2001). Neither of these cases involved a TILA claim that the APR was calculated incorrectly. *Janikowski* involved claims that the change in rates from the first to the second agreement rendered the first disclosures inaccurate and that the first disclosures should have been labeled estimates. *See Janikowski,* 210 F.3d at 767–68. As noted in the Memorandum Opinion, *Hodges* involved claims that the backdating was fraudulent and rendered the disclosures untimely. *See Hodges,* 180 F.Supp.2d at 793, *Rucker,* 228 F.Supp.2d at 719 n. 14. Thus, the failure to find a TILA violation in those cases is not in contradiction with the result reached here.

set limits on what *effective* terms the parties may agree to; they merely dictate the manner in which the terms of the credit transaction must be *disclosed.* As noted in the Memorandum Opinion, Rucker and Sheehy could have agreed to a payment schedule which reflects the retroactive imposition of the agreed upon 24.95% rate starting on April 3; all that TILA requires is that the *disclosed* APR on the RISC forms be calculated pursuant to the consummation date of April 13, not the agreed upon effective date of April 3. *See Rucker,* 228 F.Supp.2d at 718 n. 10. In other words, the parties here could have entered into precisely the same agreement reached here with regard to the amount financed, the payment schedule, and the finance charge; all that TILA requires is that the APR be disclosed as 25.35%, reflecting the April 13 consummation date, not 24.95%, reflecting the April 3 effective date.

■ Second, Sheehy argues that the backdating of a second RISC is "common in the automobile industry," and that the result reached here unjustly prevents the automobile industry from "continuing a legal business practice." Yet, the backdating of the second RISC, coupled with the corresponding use of the earlier date to calculate the APR, is not a legal business practice if it results in an APR disclosure that is materially inaccurate, it is a TILA violation. *See Rucker,* 228 F.Supp.2d at 719. Thus, there is nothing manifestly unjust about prohibiting this allegedly common industry practice. *See Polk v. Crown Auto. Inc.,* 221 F.3d 691, 692 (4th Cir.2000) (holding that the then-existing industry practice of not providing the disclosures until after the consumer signed the agreement was a clear TILA violation). Moreover, it is not the backdating of the RISC that violated TILA; it is the inaccurately stated APR that constitutes the violation. It may be possible for a backdated

RISC to include a statement of the APR that is accurate and reflects the actual consummation date. Such a case is not presented here.

■ Third, Sheehy contends that the result reached here might discourage or prohibit spot delivery transactions, with the result that consumers would be denied the opportunity to take possession of a car before the financing is approved. *See Vang v. Morrie's Minnetonka Ford,* 2001 WL 1589614 at *4 (D.Minn.2001) (holding that "TILA was not intended to thwart impromptu purchases, but rather to ensure the availability of information for all purchasers.") Yet, as is clearly stated in the Memorandum Opinion, neither TILA, nor Regulation Z, nor the result reached in this case prohibit spot delivery transactions. *See Rucker,* 228 F.Supp.2d at 719. The April 13 agreement ran afoul of TILA because of the improper APR disclosure, not because it was part of a spot delivery transaction. *See id.* More specifically, it violated TILA because the use of April 3 in calculating the APR, instead of the April 13 consummation date, in this instance resulted in a disclosed APR which was not within one-eighth of one percent of the APR as properly calculated under TILA and Regulation Z. *See id.* at 717; 15 U.S.C. § 1606(c). Provided the APR is properly calculated and disclosed, the result in this case presents no obstacle to future spot delivery transactions.

■ Fourth, Sheehy claims that the result reached here is unjust because Rucker took possession of the car on April 3, 2001, and was able to drive it freely from that date. In this regard, Sheehy contends that "[c]alculating the APR as accruing from any date after April 3, 2001 would mean that Plaintiff was in possession of the vehicle for ten (10) days without paying for it." This argument is flawed in several respects. As noted in the Memo-

randum Opinion, Sheehy was free to include in the April 3 contract a provision regarding a rental fee for use of the car if the financing fell through, but Sheehy did not do so. *See Rucker,* 228 F.Supp.2d at 719 & n. 15. And, even under the parties' original April 3 contract, Sheehy was free to demand that Rucker return the car when it became clear on April 3 that the initial financing would fall through, the very day Rucker took possession of the car; instead Sheehy chose to wait ten days for a new financing deal. Thus, there is nothing unjust in Rucker's allegedly "free ride." Finally, and most significantly, nothing in the payment schedule set forth in the April 13 agreement violated TILA; instead, only the disclosed APR figure violated TILA. Thus, as noted above, the parties were free to agree on a payment schedule which reflected the desired interest rate of 24.95% with the desired effective date of April 3; indeed, they did so and Rucker has continued to make her payments according to that schedule. Accordingly, Sheehy has in fact recovered all the money it contends it is owed on the payment schedule; but it properly suffers a penalty here because the disclosed APR was not within the degree of accuracy required by law.

Despite Sheehy's arguments that the result reached here is manifestly unjust and will cause great harm to automobile dealers, the result reached in this case does not forbid (i) spot deliveries, (ii) agreements that require a purchaser to pay for use of the car prior to the consummation of the sales transaction, or (iii) backdating of an RISC in all circumstances. It merely forbids the use of a date earlier than the actual consummation date in calculating the disclosed APR when doing so renders the APR materially inaccurate under TILA.

Sheehy has utterly failed to show that the October 9, 2002 Order and the accompanying October 16, 2002 Memorandum Opinion were clearly erroneous or manifestly unjust, nor has Sheehy shown that extraordinary circumstances justify relief. Accordingly, relief is not proper in this case under Rule 59(3) or Rule 60(b); indeed, the motions themselves are inappropriately raised here on such thin grounds. *See Pacific Ins. Co.,* 148 F.3d at 403 (holding that Rule 59(e) "may not be used to relitigate old matters," nor to "enable a party to complete presenting his case after the court has ruled against him"); *Bright,* 187 F.R.D. at 539 (holding that the desire to have the Court "reconsider its previous decision," absent a meritorious defense upon which relief could be granted, is an inappropriate basis for relief under Rule 60(b)).

Accordingly,

It is **ORDERED** that Sheehy's motion for reconsideration pursuant to Rule 59(e) and Rule 60(b), Fed.R.Civ.P., is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record.