**Emily RUCKER, Plaintiff,**

v.

**SHEEHY ALEXANDRIA, INC., d/b/a Sheehy Honda, Defendant.**

**No. CIV.A. 02–466–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 18, 2003.

Alexander Hugo Blankingship, III, Blankingship & Associates P.C., Alexandria, for Plaintiffs.

Jodi Victoria Zagorin, Hudgins Law Firm, P.C., Alexandria, Brad Darin Weiss, Charapp Deese & Weiss L.L.P., Washington, D.C., for Defendants.

## ORDER

ELLIS, District Judge.

By Corrected Order dated September 10, 2002, defendant's motion for summary judgment was granted as to Counts I, III and V of plaintiff's complaint and denied as to Counts IV and VI. *See Rucker v. Sheehy Alexandria, Inc.*, Civil Action No. 02–466–A (E.D.Va. Sept. 10, 2002) (Corrected Order). Also in the September 10, 2002 Order, the parties' cross motions for summary judgment as to Count II, stating a claim under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, were taken under advisement. *See id.* Thereafter, by Order dated October 9, 2002, summary judgment was granted in favor of plaintiff and against defendant on plaintiff's TILA claim and, by the agreement of counsel, plaintiff's remaining pendent state claims, Counts IV and VI, were dismissed without prejudice so that plaintiff might pursue them in an appropriate state court.[1] *See Rucker v. Sheehy Alexandria, Inc.*, Civil Action No. 02–466–A (E.D.Va. Oct. 9, 2002) (Order). By Order dated February 13, 2003, defendant's motion to alter or amend judgment pursuant to Rule 59(e), Fed.R.Civ.P., and motion for relief from judgment pursuant to Rule 60(b), Fed.R.Civ.P., were denied. *See Rucker v. Sheehy Alexandria, Inc.*, 244 F.Supp.2d 618 (E.D.Va. 2003) (Order). By an accompanying Order dated March 18, 2003, plaintiff's motion to alter or amend the judgment was granted, and the October 9, 2002 Order was amended to award statute damages in the amount of $13,345.82. *See Rucker v. Sheehy Alexandria, Inc.*, Civil Action No. 02–466–A (E.D.Va. Mar. 18, 2003) (Order).[2] Now, because plaintiff is the prevailing party on her TILA claim, a reasonable fee remains to be determined.

---

1. The reasons underlying these rulings were later recorded in a Memorandum Opinion dated October 16, 2002. *See Rucker v. Sheehy Alexandria, Inc.*, 228 F.Supp.2d 711 (E.D.Va. 2002).

2. The October 9, 2002 ruling on statutory damages, which capped the statutory damages at $1,000, was amended in light of the Fourth Circuit's intervening ruling in *Nigh v. Koons Buick Pontiac GMC, Inc.*, 319 F.3d 119 (4th Cir.2003) (holding that the statutory

The legal principles dispositive of a fee petition are well-settled. First, the fee applicant bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). And, it is clear that "[t]he most useful starting point for determining the amount of a reasonable fee" is to determine the lodestar amount, or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* In this regard, "[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *See EEOC v. Nutri/System, Inc.*, 685 F.Supp. 568, 573 (E.D.Va.1988). Indeed, fee claimants must submit documentation that reflects "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity," sufficient to permit the court to weigh the hours claimed and ex-

clude hours that were not "reasonably expended." *Id.* (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933).[3] Where multiple claims are involved, which rest on "distinctly different" facts and legal theories, the "burden of showing which hours are recoverable for work on the successful claims" rests on the fee applicant. *Fair Hous. Council of Greater Washington v. Landow*, 999 F.2d 92, 97 (4th Cir.1993). In this regard, a court is "entitled to expect that the applicant's records will provide some guidance in identifying recoverable hours." *Id.*

The determination of a fee award must also be informed by "other considerations that may lead the district court to adjust the fee upward or downward," including the twelve *"Johnson"* factors. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974)).[4] Ultimately, "[t]he matter of attorney fees

damages cap in 15 U.S.C. § 1640(a)(2)(A)(ii) can no longer be read to apply to § 1640(a)(2)(A)(i) given changes in the statutory text).

3. Inadequate documentation includes the practice of grouping, or "lumping," several tasks together under a single entry, without specifying the amount of time spent on each particular task. *See, e.g., In re Great Sweats, Inc.*, 113 B.R. 240, 244 (Bankr.E.D.Va.1990) (disapproving "lumping" of several tasks under a single entry without specifying the amount of time spent on each task so that no accurate determination of the reasonableness of time expended can be made); *In re WHET, Inc.*, 58 B.R. 278, 280 (Bankr.D.Mass.1986) (noting that "lumping" of day's activities makes attorneys' records of absolutely no value for any analytical purpose). This and other instances of inadequate documentation prevent an accurate determination of the reasonableness of the time expended in a case and because of this, inadequate documentation is a proper basis for reducing a fee award, which can be accomplished in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee

award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity and the counsel involved. *See EEOC*, 685 F.Supp. 568 (citing *Uzzell v. Friday*, 618 F.Supp. 1222, 1226, 1229 (M.D.N.C. 1985) (fees reduced 25% for attorneys and 35% for paralegals as a result of inadequate documentation)).

4. Specifically, the twelve *Johnson* factors are as follows: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal services; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorneys' professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

rests, of course, within the sound discretion of the trial judge, who is in the best position to determine whether,...[and to what extent], they should be awarded." *Kimberly–Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1458 (Fed.Cir.1984). And in all instances, it is important to remember that "[a] request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933.

■   These principles govern the disposition of plaintiff's fee claim, and applied here compel the following conclusions:

1.   The hourly rates proposed by the fee petition are $265 per hour for Mr. Blankingship, a partner at Blankingship & Associates; $165 per hour for Mr. Christiano, an associate; and $100 per hour for Mr. Brown, a law clerk.   These rates reflect a January, 2002 increase of $15 in the fees charged to all clients for Mr. Blankingship and Mr. Christiano's services.   Mr. Blankingship has previously been awarded an hourly rate of $250 in similar cases. This is the typical rate for an experienced law firm partner for this type of case in this area.   These rates, although at the very high end of the reasonable range for this type of case in this jurisdiction, are not unreasonable, nor indeed does defendant dispute their reasonableness.

2.   The fee petition does not provide sufficient detail for an accurate determination of the number of hours spent pursuing the successful TILA claim and the number of hours spent on the remaining five claims, two federal claims and three state claims.   With respect to the TILA claim, the fee petition seeks compensation for a total of 114.4 hours, including 35.6 hours for Mr. Blankingship, 75.2 hours for Mr. Christiano, and 3.6 hours for Mr. Brown. This results in a claimed lodestar figure of $22,202 for the TILA claim.   Although this figure reflects some effort by counsel to eliminate time devoted to non-TILA claims, the effort falls short.   For example, the 7.6 hours of attorney and law clerk time originally attributed to drafting the complaint are reduced by only 2.8 hours to reflect time spent drafting the ultimately unsuccessful claims.   In total, plaintiff subtracts a mere 10.4 hours attributable to the five unsuccessful claims, reducing the lodestar calculation by $1,866 to arrive at the total $22,202 requested.   Yet, the fee petition provides insufficient detail to ascertain whether these reductions are reasonable. The task descriptions in the petition are not broken down according to the claim involved.   Instead, they include general tasks such as "Draft Lawsuit" and "revise, edit, and modify Complaint." [5]   From these types of entries it is impossible to determine how much of the listed time was spent on the unsuccessful claims.   Instead, counsel has simply reduced the hours after the fact by a certain amount for various reasons that, in the end, are not persuasive.

3.   Counsel's fee petition is also flawed as it frequently lumps together separate tasks into a single time entry.   For example, a single entry on October 9, 2002, attributes 4.4 hours of Mr. Christiano's time to the following separate tasks: "Fi-

---

**5.** Even when individual claims are mentioned, the hours attributable to each claim are not separately provided.   Thus, for example, the entry for "Jury Instructions regarding TILA, VCPA, Fraud" is accounted for in a single listing of 2.6 hours, which was then reduced by plaintiff by 1.2 hours.

A more appropriate approach to recording the time spent on the various claims is to separate claim specific research and other tasks wherever possible from more general tasks.   Thus, rather than listing a single entry for "Draft Lawsuit," the time report should list separate entries for the time spent researching the law relevant to each claim asserted.   This would provide a reviewing court with more information than a blanket entry for "Draft Lawsuit."

nalize Direct; consult with AHB regarding direct; make changes to draft; meet with client to prepare her for her direct at trial; finalize documents to be used at trial regarding TILA, VCPA, and Fraud." [6] This lumping of tasks makes it difficult to evaluate the reasonableness of the hours expended on any one of the several tasks listed and thus further complicates the task of determining what hours were spent on unsuccessful claims. For example, it is impossible to find verification in the fee petition for counsel's assertion in the petition that 4.0 attorney hours were devoted to drafting the complaint, when the chart lists 2.2 hours for Mr. Blankingship described as "Review documents and notes from initial meeting, revise, edit and modify Complaint," and 2.6 hours for Mr. Christiano for "Revisions to Lawsuit, Finalize for filing, preparation of civil cover sheet summons, and filing of Complaint."

4. Although counsel claims to have considered each entry and made appropriate reductions to account for time spent solely in pursuit of the unsuccessful claims, in some instances there is no reduction where one seems plainly appropriate. For example, entries for trial preparation reflect a reduction of 1.2 hours for the 2.6 hours on October 3, 2002 attributed to "Jury instructions regarding TILA, VCPA, Fraud," but do not contain similar reductions for other general trial preparation tasks.[7] The TILA, fraud and Virginia Consumer Protection Act claims all involve the same two transactions. Nonetheless, where the TILA violation focused solely on the timing of those transactions and the content of the written documents, the fraud and VCPA claims required inquiry into the alleged oral and written misrepresentations made by defendant to plaintiff at the time of each transaction. Because these state claims involved matters not relevant to the TILA claim, some of plaintiff's trial preparation was unnecessary for the TILA claim and therefore not compensable.

5. The fee petition also contains some minor internal inconsistencies. In particular, Mr. Christiano lists time spent conferring with Mr. Blankingship for which there is no corresponding entry of Mr. Blankingship's time.[8] Although this might suggest that Mr. Blankingship has not accounted for all of his time spent on the case, and that the fee petition therefore underestimates the total hours spent in prosecuting the case, this and other inconsistencies undermine confidence in the overall accuracy of the petition.

6. Despite this catalogue of flaws, the fee petition is not, as defendant contends, so deficient that attorneys' fees should be completely denied in this matter.[9] Counsel correctly asserts that all of the claims

6. Although lumping of tasks in a single entry is common in this fee petition, there are also many instances where tasks are separately listed. For example, the fee petition contains four separate entries for Mr. Christiano on October 7, 2002, allocating time separately to four distinct trial preparation tasks.

7. For example, there is no reduction in time allotted to such tasks as "Draft Rucker Direct and Meet with Client," "Prepare Cross Examination of Paul Milner," "Objections to Defendant's Jury Instructions," "Finalize Direct; consult with AHB regarding direct, . . . finalize documents to be used at trial regarding TILA, VCPA, and Fraud."

8. The fee petition lists .4 hours of Mr. Christiano's time for "T/c [telephone call] with AHB re: depositions" on August 19, 2002; 1 hour of Mr. Christiano's time for "Meet with client; review research with AHB," and 2 hours of Mr Christiano's time for "Consult with AHB regarding amortization schedules." None of these listings has a corresponding entry reflecting Mr. Blankenship's time.

9. *Cf. Landow*, 999 F.2d at 98 (finding a fee petition so "outrageously unreasonable" that the complete denial of attorneys' fees is appropriate). In *Landow*, the plaintiff provided no itemization at all of the $67,000 in fees which were attributed to the unsuccessful

involve one or both of the transactions between the parties on April 3 and April 13, 2001, and thus all claims share with the TILA claim a "common core of facts and legal theories." *Landow,* 999 F.2d at 97. In other words, it is plausible that the additional claims accounted for a relatively modest percentage of additional work. Yet, the precise reduction suggested by plaintiff is unverifiable because of the flaws in the fee petition noted above. Nonetheless, given the Court's familiarity with the case, the pleadings filed, the facts involved, and the arguments advanced in support of the various claims, it is appropriate for the Court in these circumstances to make a discretionary judgment as to the approximate amount of non-recoverable fees attributable solely to the prosecution of the unsuccessful claims.[10]

■ 7. In light of the fee petition's minimal reductions in hours for time spent on claims which were not successful and the failure to provide any reduction for some tasks where a reduction seems appropriate, it is the judgment of the Court that the fee petition understates the amount of time which is not recoverable and therefore that the proposed lodestar

figure of $22,202 should be reduced. Given the common core of facts at issue in all of the claims and the progress of the litigation which increasingly focused on the TILA claim, it is not likely that this understatement is great. Nonetheless, because counsel has not provided sufficient documentation to determine accurately what the actual amount of hours spent on such claims was, the Court in its discretion reduces the $22,202 claimed by counsel a further 15% to an adjusted lodestar figure $18,871.

8. A consideration of the remaining *Johnson* factors indicates that no further adjustment of the lodestar figure is necessary. *See Johnson,* 488 F.2d at 717–19. First, nothing in the record suggests that an enhancement to the lodestar is necessary to account for the "undesirability" of this type of case and to ensure that prospective plaintiffs are able to find attorneys to bring their claims; indeed, the fee petition makes clear that plaintiff's counsel makes a regular practice of bringing such claims. Second, the fact that the recovery of fees is contingent on prevailing in the suit is not an appropriate basis on which to increase the lodestar figure.[11]   *See City of*

---

claim and excluded from the fee request. *Id.* at 95. At the same time, the plaintiff requested $537,113 in fees for its "limited success," "an amount of fees so outrageously excessive it shocked the conscience of the court." *Id.* at 98.

**10.** Defendant's contention that, given the flaws in the fee petition, the Court has no recourse but to divide the requested fees by six to reflect the fact that plaintiff has prevailed on only one of six claims to date is not persuasive; moreover, it is contrary to recent case law. *See Brodziak v. Runyon,* 145 F.3d 194, 197 (4th Cir.1998) (holding that the award of 40 percent of fees based on a determination that the plaintiff prevailed on 40 percent of his claims contradicts *Hensley,* 461 U.S. at 434–45, 103 S.Ct. 1933, and remanding the case for a proper determination of fees based on the consideration of the "relationship between various claims raised by [the

plaintiff] and the degree of overall success obtained").

In arriving at its suggested fee award of $3,399.90, defendant also excludes all hours related to trial preparation, apparently on the theory that, since cross motions for summary judgment on the TILA claim had been taken under advisement to be decided prior to trial, no trial preparation on this claim was necessary. This argument ignores the facts that (i) the summary judgment ruling on the TILA claim was not announced until the day before the trial was scheduled to begin and (ii) the TILA claim would have proceeded to trial, had a material question of fact with respect to the TILA claim remained in dispute.

**11.** Plaintiff contends that the fee award should be increased to account for "the cost to carry the case and the risk involved in losing the case."

**568**

*Burlington v. Dague,* 505 U.S. 557, 562–66, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (holding that contingency enhancement is not consistent with the lodestar approach to fee awards); *Scearce v. Halifax County, Va.,* 1996 WL 500948 (4th Cir. Sept. 5, 1996) (Table) (citing *Burlington* ). Third, the result obtained does not indicate that a change in the lodestar figure is appropriate. Here, plaintiff was successful in recovering statutory damages on the TILA claim in the amount of $13,345.82. Moreover, plaintiff obtained a ruling that backdating RISC agreements in certain circumstances will result in a TILA violation, an incremental, but meaningful step in clarifying the protection TILA offers consumers. To the extent that plaintiff was only partially successful, because she recovered on only one of her six claims, this has been addressed through the reduction of the lodestar figure to reflect the unrecoverable hours spent on those claims. *See Dennis v. Columbia Colleton Medical Center,* 290 F.3d 639 (4th Cir.2002) (holding that partial success on claims brought is properly accounted for by excluding hours attributable to the non-successful claims). Fourth, the case was not especially difficult, or demanding of attorney skill, nor was the TILA issue entirely straightforward. Although in the final analysis the TILA violation can be shown quite simply on the face of the transaction documents, provided of course that one can show that the second RISC is backdated, this conclusion required the development of a somewhat novel argument as to why the backdating of the RISC resulted in a TILA violation. Finally, the remaining *Johnson* factors—the preclusion of other employment opportunities, the nature of the relationship with the client, special time limits, and awards in other cases—are not particularly relevant here and do not militate in favor of enhancing or reducing the adjusted lodestar figure.

Accordingly,

It is ORDERED that plaintiff's motion for attorneys' fees is DENIED IN PART and GRANTED IN PART. It is DENIED insofar as plaintiff's proposed lodestar figure is reduced by 15% to reflect the fact that the fee petition likely understates the non-recoverable hours attributable solely to the non-successful claims and the fact that the fee petition does not provide sufficient detail to more accurately calculate those hours. It is GRANTED insofar as plaintiff is awarded $18,871 in attorneys' fees.

The Clerk is directed to send a copy of this Order to all counsel of record.