Joseph **KRENISKY**, Plaintiff-Appellee,

v.

**ROLLINS PROTECTIVE SERVICES COMPANY and Rollins Acceptance Corporation, Defendants-Appellants.**

No. 136, Docket 83–7370.

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1983.

Decided Feb. 3, 1984.

David M. Reilly, New Haven, Conn., for defendants-appellants.

Joseph H. Pellegrino, New Haven, Conn., for plaintiff-appellee.

Before TIMBERS, NEWMAN, and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

The Rollins Protective Services Company ("Rollins") and their finance subsidiary, the Rollins Acceptance Corporation, appeal from a judgment of the District Court for the District of Connecticut (T.F. Gilroy Daly, Chief Judge) finding them in violation of the Truth in Lending Act (TILA) and awarding plaintiff-appellee John Krenisky damages of $307.84, 15 U.S.C. § 1640(a)(2)(A)(i) (1982), and attorney's fees and costs of $1,971.48, 15 U.S.C. § 1640(a)(3) (1982). The issue is whether Rollins' failure to disclose the date on which the finance charge on Krenisky's promissory note began to accrue violated the disclo-

sure requirements of the Act. We conclude that no violation was shown and therefore reverse the judgment and remand with instructions to dismiss the complaint.

On August 22, 1978, Krenisky contracted with Rollins for the installation of an alarm system at a price of $1,920. Krenisky agreed to make a down payment of $380 and to finance the balance. He simultaneously executed a promissory note for $1,540, plus a finance charge of $153.92. Two days later, on August 24, the date on which Rollins completed the installation of the alarm system, Krenisky made the $380 down payment.

On its face, the promissory note that Rollins required Krenisky to sign does not indicate the date on which the finance charge began to accrue. The note provided for twelve monthly payments of $141.16, with the first payment due October 6, 1978. Subsequently, however, Krenisky received a payment book which indicated that the monthly payments were due on the 10th of each month.

In the District Court Krenisky argued that Rollins' documents failed to comply with Regulation Z, 12 C.F.R. § 226.8(b)(1) (pre-October 1, 1982, version),[1] *reprinted in* 15 U.S.C.A. following § 1700 p. 398 (West 1982), which requires, in any transaction extending other than open-end credit, disclosure of "the date on which the finance charge begins to accrue if different from the date of the transaction." Krenisky reasoned that since his first monthly payment was due either October 6 or 10, interest must have begun to accrue one month earlier, on September 6 or 10. Because this date differed from the date of the transaction, August 22, and Rollins had not disclosed an accrual date, Krenisky contended that Rollins had violated section 226.8(b)(1) (pre-October 1, 1982, version).

---

1. This legal framework was substantially amended (and simplified) by Congressional passage of the Truth-in-Lending Simplication and Reform Act, passed as Title VI to the Depository Institutions Deregulation and Monetary Control Act of 1980, P.L. No. 96–221, § 601, 94 Stat. 168 (1980), and by the corre-

sponding comprehensive reform of Regulation Z. Since Krenisky's transaction took place prior to the effective date of these changes, October 1, 1982, this case must be decided under TILA and Regulation Z in effect at the time of the transaction.

Rollins agreed that the date of Krenisky's transaction was August 22 and that its documents failed to indicate the "accrual date." However, Rollins disputed the need for a separate disclosure of the accrual date, maintaining that interest began to accrue on the date of the transaction, August 22. In addition, Rollins argued that even if the accrual date were different from the transaction date, Krenisky had failed to prove this alternate date and therefore could not prevail.

Chief Judge Daly ruled that a TILA violation had occurred. The District Court did not find that interest had begun to accrue at a date different from the date of the transaction. Rather, noting the confusion resulting from the various dates on which the finance charge might have begun to accrue, the Court concluded that Rollins was obligated to disclose the accrual date.

■ The central purpose of the regulatory requirement of disclosure of the accrual date (where different from the transaction date) is to permit accurate calculation of the annual percentage rate, perhaps the single most useful disclosure mandated by the Act. In a closed-end transaction such as Krenisky's consumer loan, the annual percentage rate is a derived figure, calculated from (i) the amount of the finance charge, (ii) the amount of credit extended, and (iii) the term of the extension of credit—the time period between the date interest starts accruing and the date of the last payment. If the transaction date and the accrual date do not coincide, the effective interest rate will be lower than the rate derived from the transaction date if the accrual date is later, and higher if the accrual date is earlier. If two creditors claim to be charging identical annual rates but one commences accruing finance charges months prior to the date of the transaction, he charges a higher effective annual rate although the disclosed rates are identical.

Krenisky infers from the irregularly long first-payment period, August 22 to October 6 or 10, that the accrual date could not have been the transaction date. Working backward from the disclosed finance charge, annual percentage rate, and last-payment date, he derived an accrual date slightly later than the transaction date. This conclusion does not necessarily follow. In fact, an available inference, fully consistent with Rollins' disclosures and the regulatory framework implemented by Regulation Z, is that the transaction date is also the accrual date. Two modes of analysis each support this conclusion.

■ First, the regulations permit a creditor, without disclosure, unilaterally to reduce the annual percentage rate, provided no other credit terms are altered. 12 C.F.R. §§ 226.8(j) and 226.817 (pre-October 1, 1982, version), *reprinted in* 15 U.S.C.A. following § 1700 pp. 402, 489 (West 1982); *see also* 12 C.F.R. § 226.6(h) (pre-October 1, 1982, version), *reprinted in* 15 U.S.C.A. following § 1700 p. 385 (West 1982).[2] The annual percentage rate may be reduced, without disclosure, in one of two ways: by lowering the amount of the finance charge, or by extending the time period of the extension of credit. If Rollins accrued interest from the transaction date and simply permitted Krenisky an irregularly long first payment period, Rollins would thereby have accomplished a permitted reduction in the annual percentage rate. To assume, as Krenisky does, that the accrual date must have been no earlier than thirty days prior to the first payment date (and hence different from the transaction date) is to deny the creditor his right to reduce the annual rate by lengthening the term of the loan.

Moreover, this construction is fully consistent with the broad purposes of the Act and with the specific concerns animating the requirement of disclosure of the accrual date, 12 C.F.R. § 226.8(b)(1) (pre-October 1, 1982, version). The protections extended to

---

2. Similarly, where the creditor grants an extension or deferral of payment without imposing a finance charge, no disclosure is required. 12 C.F.R. § 226.8(*l*) (pre-October 1, 1982, version), *reprinted in* 15 U.S.C.A. following § 1700 p. 402 (West 1982).

consumers against creditor overreaching are not compromised by non-disclosure of unilateral *reductions* in credit terms.[3]

Second, the regulations specifically contemplate an irregular first payment period, either lengthened or shortened. Under 12 C.F.R. §§ 226.5(d), 226.503, and 226.505 (pre-October 1, 1982, version), *reprinted in* 15 U.S.C.A. following § 1700 pp. 381, 471–73 (West 1982), a creditor may, at his option,

> in determining [and disclosing] the annual percentage rate . . . or the finance charge . . . consider the payment irregularities set forth in this paragraph as if they were regular in amount or *time,* as applicable, provided that the transaction to which they relate is otherwise payable in equal installments at equal intervals . . . [and] the interval between the date on which the finance charge begins to accrue and the date the first payment is due is . . . not less than 20 [or more than 50 days] for an obligation otherwise payable in monthly installments.

(Emphasis added). Since Krenisky's first payment period is at most 49 days (August 22 to October 10), Rollins is entitled to benefit from this exception. This provision permits ignoring, on administrative convenience grounds, *de minimis* discrepancies in the annual percentage rate or the finance charge attributable to an irregular first payment period. It is entirely consistent with this provision that interest began to accrue on August 22.[4]

The burden was on the plaintiff to prove that the accrual date differed from the transaction date, thereby requiring disclosure. Though accrual might have begun after the transaction date, it could just as likely have begun on the transaction date, and that result would be consistent with either a permitted unilateral reduction in the percentage rate or a permitted irregular first payment period. In the absence of a finding based on evidence that the accrual date differed from the transaction date, no violation was established. We need not consider whether departure from strict compliance with the regulations would be

---

**3.** Our view of the "accrual date" regulation in force at the time of Krenisky's transaction is consistent with the current regulations, which do not require separate disclosure of the date interest starts accruing, 12 C.F.R. §§ 226.17 and 226.18 (1983). The accrual date is employed for the purpose of calculating the annual percentage rate, 12 C.F.R. App. J(b)(2) (1983). The recent amendments deal more precisely with the abuse the "accrual date" regulation was aimed at. Under the present scheme, accrual dates *prior* to the date of consummation are apparently prohibited. *Compare* 12 C.F.R. § 226.40(b)(1) (pre-October 1, 1982, version), *reprinted in* 15 U.S.C.A. following § 1700 p. 424 (West 1982) ("term of the transaction commences on the date of its consummation, except that if the finance charge begins to accrue on any *other* date, the term of the transaction shall be the date the finance charge begins to accrue") (emphasis added), *with* 12 C.F.R. App. J(b)(2) (1983) ("term of transaction begins on the date of its consummation, except that if the finance charge or any portion of it is earned beginning on a *later* date, the term begins on the later date") (emphasis added).

**4.** We find no merit in Krenisky's contention that August 22 could not be the accrual date either because the installation of the alarm system was not commenced until August 23 and not completed until August 24, one or two days after the parties entered into the loan agreement, or because the borrowed funds were not credited to Krenisky's account with Rollins until September 1. Plaintiff apparently assumes that a creditor may not charge interest until the credit transaction has been fully consummated. This assumption is unwarranted. The presumption underlying 12 C.F.R. § 226.8(b)(1) (pre-October 1, 1982, version) is that creditors may commence charging interest at a date other than the date of the transaction and that the accrual date may pre- or post-date the transaction date. Moreover, the rescission provisions of the Act expressly preclude a creditor from disbursing funds or performing other specified acts until three days after the date of the transaction. 12 C.F.R. § 226.9(c) (pre-October 1, 1982, version), *reprinted in* 15 U.S.C.A. following § 1700 p. 407 (West 1982). Thus, in many credit transactions, final consummation will post-date by three days the transaction date, which the regulations assume will normally start the accrual period. And, in this case, the extension of credit to finance the installation could have begun on the transaction date, even though funds were not moved from Rollins Acceptance Corporation to Rollins Protective Services Company until September 1.

permissible when a violation is both *de minimis* and of benefit to the consumer.[5]

Reversed.

**5.** The few courts that have faced the type of technical violation alleged by Krenisky have reached conflicting results. *Compare Ljepava v. M.L.S.C. Properties, Inc.,* 511 F.2d 935, 943 n. 8 (9th Cir.1975) (disclosure statement inadequate that failed to indicate interest began to accrue one day *before* transaction date); *Kenney v. Landis Financial Group, Inc.,* 349 F.Supp. 939, 950 (N.D. Iowa 1972) (finding violation where "accrual of pre-computed interest begins later than the date of the transaction"), *with In re Walters,* 17 B.R. 644 (Bkrtcy.S.D. Ohio 1982) (where parties stipulated interest charge commenced one day subsequent to date of transaction but creditor made no disclosure, no violation found since variance benefited consumer).

For cases extending lenient review to technical, *de minimis* violations that do not harm borrowers, *see, e.g., Kramer v. Marine Midland Bank,* 559 F.Supp. 273, 284, 287 (S.D.N.Y.1983) (failure to disclose date insurance requested); *Dixon v. D.H. Holmes Co.,* 566 F.2d 571 (5th Cir.1978) (per curiam) (failure to use required language).