Filed 12/15/16

# IN THE SUPREME COURT OF CALIFORNIA

|  |  |  |
|---|---|---|
| RACEWAY FORD CASES. | ) ) ) ) ) ) | S222211 |
|  |  | Ct.App. 4/2 E054517, E056595 |
|  |  | Riverside County Super. Ct. |
|  |  | JCCP No. 4476 |
| _____) |  |  |

The Automobile Sales Finance Act (ASFA), also known as the Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, § 2981 et seq.) is a consumer protection statute that governs the sale of vehicles where the buyer finances all or part of the car's purchase price.  We granted review to determine (1) whether defendant Raceway Ford, Inc. (Raceway) violated ASFA when, after agreeing to an initial finance contract, it would enter into a subsequent finance contract with a buyer and backdate the second contract to the date of the first contract; and (2) whether Raceway violated ASFA when a computer error caused Raceway to incorrectly include smog-related fees in buyers' purchase contracts.

We conclude (1) that Raceway's practice of backdating contracts did not violate ASFA and (2) that Raceway did violate ASFA when it disclosed inaccurate smog fees, but plaintiffs are not entitled to a remedy under ASFA because the violation was due to an "accidental or bona fide error in computation."  (Civ. Code, § 2983, subd. (a).)

## I.

ASFA, which took effect on January 1, 1962, "is a consumer protection law governing the sale of cars in which the buyer finances some, or all, of the car's purchase price." (*Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997, 1002.) "The act replaced the 1945 Automobile Sales Act and was designed to provide a more comprehensive protection for the unsophisticated motor vehicle customer." (*Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 69 (*Hernandez*).) The act was "clearly designed to protect the purchaser of a motor vehicle from economic hazards which the Assembly Interim Committee on Finance and Insurance and the courts had found prevalent under the old act . . . ." (*Ibid.*) The Assembly interim committee was concerned with specific abuses by dealers, including "excessive interest charges; lack of full disclosures to the buyer; taking of security in addition to the car to assure repayment; the use of more than one document in connection with the sale and financing; and lack of protection in the event of default and repossession." (*Kunert v. Mission Financial Services Corp.* (2003) 110 Cal.App.4th 242, 257–258; see Assem. Interim Com. on Finance and Ins. Final Rep. (Dec. 1960), 1 Appen. to Assem. J. (1961 Reg. Sess.) pp. 8–29 (Final Report).) In determining whether the act applies to a particular transaction "we look to the substance of the transaction and do not allow mere form to dictate the result." (*Bermudez v. Fulton Auto Depot, LLC* (2009) 179 Cal.App.4th 1318, 1323 (*Bermudez*).) Whether the act "appl[ies] to a particular transaction, is determined in light of the policies of the Act." (*Salenga v. Mitsubishi Motors Credit of America, Inc.* (2010) 183 Cal.App.4th 986, 998, disapproved on other grounds in *Aryeh v. Canon Business Solutions Inc.* (2013) 55 Cal.4th 1185, 1196–1197.)

ASFA applies to a "conditional sale contract," that is, "[a] contract for the sale of a motor vehicle . . . under which possession is delivered to the buyer" and

2

either "(A) [t]he title vests in the buyer thereafter only upon the payment of all or a part of the price, or the performance of any other condition," or "(B) [a] lien on the property is to vest in the seller as security for the payment of part or all of the price, or for the performance of any other condition." (Civ. Code, § 2981, subd. (a); all undesignated statutory references are to this code.) Every conditional sale contract must contain "in a single document all of the agreements of the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or any other evidences of indebtedness." (§ 2981.9.) When selling a vehicle to a buyer who finances some or all of the purchase, a car dealer must disclose the amount financed in compliance with the specific itemization required by section 2982, subdivision (a) (section 2982(a)), including a breakdown of the cash price and the downpayment. These disclosure requirements are designed "to enable the buyer to know just what his deal is." (Final Rep., *supra*, 1 Appen. to Assem. J. at p. 32; see *Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29 (*Stasher*) [" ' "The obvious purpose of the statute is to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost." ' "].)

In addition to the disclosures listed in section 2982(a), the introductory paragraph of section 2982 says that "[a] conditional sale contract subject to this chapter shall contain the disclosures required by Regulation Z, whether or not Regulation Z applies to the transaction." (§ 2982.) Regulation Z (12 C.F.R. § 226.1 et seq. (2016)) was issued by the Federal Reserve Board pursuant to the Truth in Lending Act (TILA; 15 U.S.C. § 1601 et seq.). Its purpose "is to assure that a consumer will be in a position to 'compare more readily the various credit terms available to him and avoid the uninformed use of credit.' " (*Drennan v. Security Pac. Nat. Bank* (1981) 28 Cal.3d 764, 770.) The core disclosures required by Regulation Z are the finance charge and the annual percentage rate

3

(APR) of the transaction.  (15 U.S.C. § 1638(a)(4); 12 C.F.R. § 226.18(e) (2016).)

The finance charge is "the cost of consumer credit as a dollar amount.  It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."  (12 C.F.R. § 226.4(a) (2016).)  The APR is "a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made."  (12 C.F.R. § 226.22(a)(1) (2016).)

A buyer is entitled to rescission and restitution for certain violations of ASFA.  Section 2983, subdivision (a) says:  "Except as provided in subdivision (b), if the seller, except as the result of an accidental or bona fide error in computation, violates any provision of Section 2981.9, or of subdivision (a), (j), or (k) of Section 2982, the conditional sale contract shall not be enforceable, except by a bona fide purchaser, assignee, or pledgee for value, or until after the violation is corrected as provided in Section 2984, and, if the violation is not corrected, the buyer may recover from the seller the total amount paid, pursuant to the terms of the contract, by the buyer to the seller or his or her assignee."  And section 2983.1, subdivision (d) says:  "When a conditional sale contract is not enforceable under Section 2983 or this section, the buyer may elect to retain the motor vehicle and continue the contract in force, or may, with reasonable diligence, elect to rescind the contract and return the motor vehicle."

## II.

Plaintiffs are consumers who purchased vehicles from Raceway, an automobile dealership.  The plaintiffs alleged 18 causes of action, including claims on behalf of several separate classes, and other claims on behalf of certain individual plaintiffs.  The claims at issue in this appeal relate to two plaintiff classes labeled as "Class One" and "Class Two" in the complaint.

4

Class One's claims concern Raceway's practice of backdating certain finance contracts. In addition to selling vehicles, Raceway offered financing to its customers and would attempt to assign the finance contract to a commercial lender. According to the sale and financing contracts signed by Raceway's customers, if Raceway could not find a lender willing to take on the finance contract on the terms Raceway had negotiated with the customer within 10 days, Raceway had the right to unilaterally rescind the contract. In some instances, after the customer had taken possession of the vehicle, Raceway was in fact unable to find a willing lender. In those cases, Raceway contacted the customer and requested to change the terms of the sale and financing. Raceway then entered into a second contract with the customer for the same vehicle under different terms. Before late 2004, it was Raceway's practice to backdate the later contract to the initial date of the sale. In addition to signing the second contract, the customer would sign an "Acknowledgment of Rescinded Contract" or "Acknowledgment of Rewritten Contract," which was also backdated to the date of the initial sale.

The trial court certified Class One as consisting of "[a]ll persons who, since January 12, 2001, (1) purchased a vehicle from Raceway Ford, for personal use, (2) on a later date rescinded their original purchase contract, and (3) signed a subsequent or second contract for the purchase of the same vehicle, which contract was dated the date of the original purchase contract and involved financing at an annual percentage rate greater than 0.00%." According to plaintiffs, there are 1,100 members in this class.

At trial, Class One asserted claims under ASFA, the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.), and the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) based on Raceway's backdating practice. Specifically, Class One argued that because plaintiffs' second contracts

5

were not consummated until the date of the execution of the second contracts, plaintiffs were incorrectly charged interest for the period of time between the date of the first contract and the date of the second contract.

Class Two's claims stem from Raceway's concession that it erroneously charged purchasers of diesel vehicles certain fees for performing a smog check and obtaining state smog certification that should only have been charged to purchasers of gasoline-powered vehicles. Raceway relied on a computer program that calculated the smog fee based on an inventory clerk's entry for whether the car used diesel fuel or gasoline. If the clerk classified a car as diesel, the computer system was supposed to default the smog fees to zero. The clerk correctly classified vehicles as diesel, but due to a programming error, the computer system for a period of time incorrectly charged smog fees for diesel vehicles. Raceway first learned of this problem when plaintiffs' attorneys notified Raceway of the incorrect charges on January 14, 2005. Raceway was unable to fix the program on its own and had to call an outside technician. Upon notification of the charges, Raceway refunded the smog fees, plus taxes and interest, to all customers who had been incorrectly charged.

The trial court classified Class Two as consisting of all persons "who, since January 12, 2001, purchased a diesel vehicle from Raceway for personal use and were charged a smog fee and a smog certification fee." According to plaintiffs, there are 48 members of Class Two. At trial, Class Two asserted an ASFA claim alleging that Raceway violated section 2982(a).

After a bench trial, the trial court on April 16, 2010, issued a statement of decision that found in favor of Raceway on all claims relevant to this appeal. As to the backdating claims, the trial court held that "[a] rewritten contract does not generate a new consummation date under either federal or state law, so there was no incorrectly overcharged interest . . . ." As to the smog fee claims, the trial court

6

found that "Raceway is not legally required to do more to correct its erroneous collection of smog fees on the used diesel vehicles brought by members of this class . . . . The court finds it to have been a bona fide error corrected with full refunds plus interest within a reasonable time under the [ASFA]." On December 10, 2010, the trial court withdrew its statement of decision and announced it was finding for plaintiffs in light of *Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983 (*Nelson*), which is discussed further below. Raceway petitioned for a writ of mandate, and the Court of Appeal issued a peremptory writ directing the trial court to vacate its December 10, 2010 order and enter judgment in conformity with its April 16, 2010 statement of decision. The trial court did so and made the judgment retroactive to June 10, 2010. Plaintiffs appealed.

The Court of Appeal affirmed the trial court's judgment with respect to plaintiffs' smog fee claims. It found no ASFA violation because "[t]here are no hidden, undisclosed costs in the contracts entered into by the members of Class Two; the amounts charged for smog-related fees were accurately and explicitly stated in writing, and the terms of the deal, including the smog fees, were accepted by the customers when they signed their contracts."

The Court of Appeal reversed the trial court's judgment in favor of Raceway with respect to plaintiffs' backdating claims, explaining that customers did "not become legally obligated to the terms of the credit transaction embodied in their *second or subsequent* contract with Raceway . . . until that second or subsequent contract was signed. [Citation.] Thus, the date the second or subsequent contract was signed would normally be the appropriate date to use as the beginning of the term for purposes of calculating the APR . . . , under the method required by Regulation Z." But the Court of Appeal held that judgment in favor of plaintiffs was not necessarily appropriate in all cases of backdating by Raceway because "Regulation Z contemplates certain circumstances where a

7

second or subsequent contract between a buyer and a seller does not trigger any requirement for further disclosures, including with respect to APR." The Court of Appeal also recognized that "Regulation Z allows for a small margin of error with respect to calculation of the APR. A disclosed APR is 'considered accurate' under Regulation Z if it is not more than 1/8 of 1 percentage point above or below' the rate determined utilizing the authorized methods." While recognizing that ASFA may not provide any remedy for the potentially inaccurate APR disclosures, the Court of Appeal nonetheless remanded the ASFA claims to the trial court because "[a] judgment in favor of plaintiffs — even a symbolic judgment unaccompanied by an award of monetary damages or other remedy — would necessarily alter the trial court's 'prevailing party' analysis."

As to plaintiffs' other claims concerning backdating, the Court of Appeal did not agree with *Nelson* that the backdating imposed an "illegal finance charge," and it rejected plaintiffs' argument that Raceway's actions violated sections 2981.9 and 2982(a). The court also rejected plaintiffs' UCL and CLRA claims.

We granted review of plaintiffs' ASFA claims.

### III.

Plaintiffs in Class One contend that Raceway's practice of backdating contracts violated section 2982(a) because it resulted in an illegal finance charge. Specifically, they argue that because the second contracts were not consummated until the date of execution of the second contracts, Raceway was prohibited from charging interest from the date of the first contracts. Plaintiffs also argue that Raceway's backdating practice violated section 2981.9's "single document rule" because plaintiffs were required to examine multiple documents to determine that they paid an illegal pre-consummation charge.

8

## A.

At the outset, it is useful to further clarify the meaning of "finance charge" and "APR," the two terms commonly used to quantify the cost of credit. As noted, Regulation Z and ASFA define a finance charge as the "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." (12 C.F.R. § 226.4 (a) (2016); see Civ. Code, § 2981, subd. (i) [giving "finance charge" the meaning set forth in section 226.4 of Regulation Z]; Rohner & Miller, The Law of Truth and Lending (2014) p. 181 ["The finance charge is the consumer's cost of credit, in dollars and cents."].) Conventional interest charges fall squarely within the definition of finance charge. (12 C.F.R. § 226.4 (b)(1).) But a finance charge can include other costs incidental to the extension of credit, including transaction fees and loan origination fees. For example, if a consumer must pay a $25 credit report fee for an auto loan, the fee must be included in the finance charge along with the sum of the interest on the loan. (See Consumer Financial Protection Bur., CFPB Supervision and Examination Manual (Oct. 2012) TILA Procedures [Sept. 2015 update] <http://files.consumerfinance.gov/f/201503_cfpb_truth-in-lending-act.pdf> (as of Dec. 15, 2016) (CFPB TILA Procedures).)

Although the finance charge and the APR are related, they are distinct metrics. The APR is "a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made." (12 C.F.R. § 226.22(a)(1) (2016).) "[T]wo loans could require the same finance charge and still have different APRs because of differing values of the amount financed or of payment schedules. For example, the APR is 12 percent on a loan with an amount financed of $5,000 and 36 equal monthly payments of $166.07 each. It is 13.26 percent on a loan with an

9

amount financed of $4,500 and 35 equal monthly payments of $152.18 each and final payment of $152.22. In both cases the finance charge is $978.52. The APRs on these example loans are not the same because an APR does not only reflect the finance charge. It relates the amount and timing of value received by the consumer to the amount and timing of payments made." (CFPB TILA Procedures, *supra*, at p. 15.)

**B.**

The consummation date of a transaction is directly relevant to the calculation of the APR. Under Regulation Z, the transaction for purposes of calculating the APR "begins on the date of its consummation, except that if the finance charge or any portion of it is earned beginning on a later date, the term begins on the later date." (12 C.F.R. § 226, appen. J, par. (b)(2).) Because the APR involves a calculation of finance charges spread over the entire payment period, using an earlier date as the consummation date will result in a lower APR than using a later date, assuming the same final payment date.

We agree with plaintiffs that the relevant consummation date in this case is the date the second contract was signed. Under Regulation Z, consummation occurs when a consumer "becomes legally obligated to accept a particular credit arrangement." (Off. Staff Interpretations, 12 C.F.R. § 226, supp. I, subpt. A, par. (2)(a)(13)(2) (2016).) Although plaintiffs did become bound to the initial finance terms included in the first contract on the date the first contract was signed, they were not bound by the *specific* financing terms of the second contract until the date the second contract was signed. (See *Gibson v. LTD, Inc.* (4th Cir. 2006) 434 F.3d 275, 286 [subsequent contract consummated a finance arrangement]; *Janikowski v. Lynch Ford, Inc.* (7th Cir. 2000) 210 F.3d 765, 769 [suggesting that the initial contract and subsequent contract had two separate consummation dates].) That is true regardless of whether the second contract is deemed a

10

novation of the first.  (See Black's Law Dict. (7th ed. 1999) p. 1091, col. 2 [defining novation as "[t]he act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party."].)  Even if the second contract were a novation of the first, it would not change the fact that plaintiffs were not bound by the specific financing terms in the second contract until they agreed to those terms by signing that contract.

Raceway argues that this interpretation runs contrary to state law deeming a vehicle sale "completed and consummated when the purchaser of the vehicle has paid the purchase price, or, in lieu thereof, has signed a purchase contract or security agreement, and has taken physical possession or delivery of the vehicle." (Veh. Code, § 5901, subd. (d).)  But this provision of the Vehicle Code concerns the consummation of a *sale* rather than the consummation of a "particular credit arrangement" and is thus irrelevant for purposes of Regulation Z.  (Off. Staff Interpretations, 12 C.F.R. § 226, supp. I, subpt. A, par. (2)(a)(13)(2) (2016) [consummation "does not occur when the consumer becomes contractually committed to a sale transaction, unless the consumer also becomes legally obligated to accept a particular credit arrangement"].)

Although Raceway's practice of using the date of the initial contract to calculate the APR disclosed on the second contract appears inconsistent with Regulation Z, the APR disclosures on the second contracts do not necessarily violate Regulation Z for two reasons.  First, under Regulation Z, the disclosed APR must only be accurate to within one-eighth of one percent of the properly calculated APR.  (12 C.F.R. § 226.22(a)(2) (2016).)  Because some of the Class One contracts were backdated by only a few days, it is possible that those APRs fell within this margin of error permitted by Regulation Z.

11

Second, in certain situations, the "irregular first period" exception provided by 12 C.F.R. part 226.17(c)(4) allows creditors to ignore a long or short first payment period in disclosing the APR. Under this exception, the first payment period may be up to six days shorter or 13 days longer than a regular period for transactions less than a year long, up to 11 days shorter or 21 days longer for transaction between one and 10 years, and up to 32 days shorter or longer for transactions 10 years long or more. (*Ibid.*) "This provision permits ignoring, on administrative convenience grounds, *de minimis* discrepancies in the annual percentage rate . . . attributable to an irregular first payment period." (*Krenisky v. Rollins Protective Services Co.* (1984) 728 F.2d 64, 67 (*Krenisky*).) For any contracts falling within the scope of part 226.17(c)(4), Raceway was permitted to ignore the fact that the first period (using the correct consummation date) would be shorter than a regular payment period and could base its calculations on an assumption of equal intervals "even though a precise computation would produce slightly different amounts because of the shorter first period." (Off. Staff Interpretations, 12 C.F.R. § 226, supp. I, subpt. C, par. (17)(c)(4) (2016).)

Plaintiffs do not dispute that the APRs disclosed in the second contracts may be accurate within the tolerances allowed by Regulation Z. Plaintiffs contend that "[s]ince Petitioner sued for a violation of the disclosure requirements of the ASFA, and the charging of and failure to disclose the charge for pre-consummation interest violates Civil Code Section 2982(a), it is irrelevant for purposes of this lawsuit whether the APRs were accurate within the tolerances permitted by Regulation Z." Plaintiffs' expert suggested at trial that the APRs disclosed were inaccurate but within the tolerance permitted by Regulation Z, noting that the accuracy of the APRs was "not even an issue in this case." Accordingly, we conclude that the Court of Appeal erred when it remanded this case to the trial court for further proceedings involving the calculation of APRs.

12

## C.

Plaintiffs argue that regardless of whether the APR was accurately disclosed, Raceway's backdating practice violates ASFA because Raceway erroneously charged plaintiffs for interest that accrued before they signed the second contract. At trial, plaintiffs' expert argued that because Raceway was not permitted to include in the finance charge interest accrued before consummation of the second contract, the finance charges disclosed to plaintiffs on the second contracts were overstated. Plaintiffs rely on *Nelson*, *supra*, 186 Cal.App.4th 983, where consumers similarly argued that a car dealer's practice of backdating second or subsequent contracts violated ASFA. *Nelson* recognized that "the second contract contained all the disclosures required by subdivision (a) of section 2982 . . . . However, [the defendant's] act of backdating the second contract resulted in Nelson paying a finance charge before consummation of the contract. [Citations.] Accordingly, the backdating of the second contract caused Nelson to pay interest on a contract that did not exist. We consider this pre-consummation interest to be an illegal finance charge." (*Nelson*, at p. 1003.)

In reaching this holding, the court in *Nelson* relied on dicta from *Krenisky*, *supra*, 728 F.2d 64, and *Rucker v. Sheehy Alexandria*, *Inc.* (E.D. Va. 2002) 228 F.Supp.2d 711 (*Rucker I*), but neither case is on point. As the Court of Appeal below recognized, those cases stand for the proposition that the APR may not be calculated using a date prior to the date of consummation. (*Krenisky*, *supra*, 728 F.2d at p. 67, fn. 3; *Rucker I*, *supra*, 228 F.Supp.2d at p. 717.) Neither case holds that the finance charge cannot include interest that accrued under an initial contract prior to the consummation date of a subsequent contract.

Although Regulation Z instructs that the APR is to be calculated by reference to the consummation date of a financing agreement, nothing in Regulation Z or ASFA suggests that when a consumer signs an initial contract that

13

is later supplanted by a second contract, the finance charge in the second contract may not include interest that already accrued under the initial contract. Were it otherwise, the consummation of a second contract would essentially require the seller to give the buyer an interest-free loan for the period between execution of the first contract and execution of the second. No statute or regulation entitles the buyer to such a windfall.

The court in *Rucker v. Sheehy Alexandria, Inc.* (E.D. Va. 2003) 244 F.Supp.2d 618 (*Rucker II*) recognized the distinction between a finance charge and an APR in assessing the significance of the consummation date of a second contract. There the court found that a car dealership had violated TILA by backdating the contract at issue because the APR was incorrectly calculated using the date of the first contract rather than the date of the second contract. (*Rucker II*, at p. 623.) But the court held that "the parties here could have entered into precisely the same agreement reached here with regard to the amount financed, the payment schedule, and *the finance charge*; all that TILA requires is that the APR be disclosed as 25.35%, reflecting the April 13 consummation date, not 24.95%, reflecting the April 3 effective date." (*Id.* at p. 626, italics added.) *Rucker II* confirms that the APR, but not the finance charge, must be calculated by reference to the consummation date of the second contract.

Contrary to what *Nelson* suggests, Raceway did not cause plaintiffs "to pay interest on a contract that did not exist." (*Nelson*, *supra*, 186 Cal.App.4th at p. 1003.) What *Nelson* and plaintiffs here describe as "pre-consummation interest" (*ibid.*) was interest that accrued under the initial contract. Plaintiffs agreed to pay that interest under that contract, and there is nothing improper about a finance charge in a second contract that includes interest already accrued under the first contract before execution of the second contract.

14

The court in *Nelson* held that "Nelson's consent to the backdating of the second contract does not protect [the defendant] because it hid from Nelson the costs associated with backdating the second contract." (*Nelson*, *supra*, 186 Cal.App.4th at p. 1003.) Plaintiffs adopt this reasoning, arguing that even if the parties can contract to include interest from a date prior to consummation in the contract, Raceway violated ASFA because the pre-consummation interest charged must be separately disclosed under section 2982(a).

Section 2982(a) lists the specific itemized disclosures that make up the "amount financed." For example, it requires an itemized disclosure of the cash price (§ 2982, subd. (a)(1)) and the downpayment (§ 2982, subd. (a)(6)). Because section 2982(a) deals only with the itemized disclosures required for the amount financed, it has no bearing on disclosure of the finance charge. Moreover, although a creditor cannot "charge, collect, or receive a finance charge that exceeds the disclosed finance charge" (§ 2982, subd. (j)(2)), nothing in Regulation Z or ASFA requires the finance charge to be separately itemized into pre-consummation and post-consummation interest.

While acknowledging that the contracts in that case contained all of the disclosures required by section 2982(a), the court in *Nelson* relied on *Thompson v. 10,000 RV Sales, Inc.* (2005) 130 Cal.App.4th 950 (*Thompson*) to suggest that the fact that all of the relevant disclosures were made is not sufficient. In *Thompson*, the dealer manipulated the numbers in Thompson's contract, causing several of the itemized disclosures required by section 2982(a) to be inaccurate. (*Thompson*, at pp. 970–973.) The dealer also failed to adequately disclose the finance charge by overinflating the cash price. The court recognized that "the evidence . . . showed that although the cash price, the value of the trade-in vehicle and the amount financed were *stated* in the contract signed by Thompson, [the defendant] did not disclose that the $24,000 trade-in over-allowance or the amount still owing on

15

Thompson's trade-in vehicle were included in the cash price of the vehicle she purchased. The contract showed Thompson had no prior credit balance on her trade-in vehicle when, in reality, she had a remaining loan balance of $16,000 in addition to the $30,000 value [the defendant] believed the trade-in was worth . . . . Consequently, cost items that comprised the amount financed were inaccurate and violated the ASFA's disclosure provisions . . . ." (*Id.* at p. 973, fn. omitted.) Moreover, "[b]ecause inclusion of the overallowance in the cash price of the Safari was a condition of credit and therefore a finance charge, failing to disclose the over-allowance as a finance charge violated the disclosure provisions of the ASFA." (*Id.* at p. 970.)

But here, by contrast, because the interest charged prior to consummation of the second contract was accurately disclosed as part of the finance charge, Raceway did not run afoul of the disclosures required by section 2982(a). Plaintiffs' own expert acknowledged that the interest charged between the date of the initial contract and second contract was included in the finance charge listed on the second contract, and plaintiffs do not contend that the interest charged was inaccurate.

Our holding on this point is consistent with the goals of ASFA. Plaintiffs were first extended financing and allowed to take possession of the vehicle on the date of the first contract. It is neither abusive nor deceptive to allow the creditor to charge interest during the period between the first and second contracts. The court in *Nelson* suggested that "[w]hile it may have been logical for [the dealer] to backdate the contract because Nelson used the car for six days before consummating the transaction, there were other methods it could use in the event an original contract is voided due to the failure to obtain financing," including charging a rental fee. (*Nelson*, *supra*, 186 Cal.App.4th at p. 1003.) We do not see why such an arrangement would be appropriate if charging interest that accrued

16

before consummation of the second contract is not. In both scenarios, the parties pay a finance charge. In both scenarios, the charge is incidental to the extension of credit and relates to a period of time before the parties become obligated to the second contract. In sum, we agree with the Court of Appeal that Raceway did not impose an illegal finance charge when it included interest accrued under the initial contract in the finance charge disclosed in the second contract.

**D.**

Plaintiffs also contend that Raceway's backdating practice violated section 2981.9's requirement that a conditional sale contract "contain in a single document all of the agreements of the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or any other evidences of indebtedness." The purpose of the single document rule is "the facilitation of the consumer's review of all of the parties' agreements before the consumer signs the sale or lease contract, so that the consumer has complete and accurate information." (92 Ops.Cal.Atty.Gen. 97 (2009) p. 3.) The single document rule is also designed to prevent the use of side-note financing agreements. (Comment, *Recent Legislation: The Rees-Levering Motor Vehicle Sales and Finance Act* (1962) 10 UCLA L.Rev. 125, 132.) In a side-note financing agreement, "the buyer informs the seller of the maximum monthly payment that he can afford. The seller then sets the payment amount at that figure for a specified period of time, and the buyer believes that this payment amount will represent his total monthly obligation. The seller then tells the buyer to go to a finance company to sign some papers. These papers are for a side-note to finance a down payment which had not been previously discussed. Coupled with his obligation under the conditional sale contract, the buyer must now make two payments each period instead of one—an undertaking which he did not anticipate." (*Ibid.*, fn. omitted.)

17

Plaintiffs rely on *Nelson*, where the court found that a backdating practice similar to Raceway's violated the single document rule because "anyone reviewing the original contract and the second contract had no means of determining (1) the operative contract; (2) the date the parties consummated the transaction, and thus, the correct APR; or (3) that [the plaintiff] improperly paid a finance charge when no contract existed." (*Nelson*, *supra*, 186 Cal.App.4th at p. 1004.) According to *Nelson*, "[t]he only way to determine the date the parties consummated the transaction, the correct APR, and that Nelson improperly paid a finance charge when no contract existed is to review the three documents and perform some calculations." (*Ibid.*)

But the analysis in *Nelson* is not convincing. Nothing in the original contract or the "Acknowledgment of Rescinded Contract" or "Acknowledgment of Rewritten Contract" signed by the consumer set forth an agreement that was not included in the operative contract. The acknowledgments did not include any additional terms, and it explicitly rendered the initial contract void. Moreover, the consumer, having signed both the original contract and the subsequent contract, can be presumed to know which contract is the operative one, and the operative contract did contain the APR. The plaintiffs' arguments regarding the accuracy of the APR and the finance charge implicated the disclosure requirements of section 2982(a), not the single document rule of section 2981.9. As the Court of Appeal below observed, *Nelson*'s interpretation suggesting otherwise would render the disclosure requirements of section 2982(a) superfluous. Finally, because there is nothing illegal about imposing an interest charge for the period between execution of the initial contract and execution of the subsequent contract, there is no merit to *Nelson*'s assertion that the backdated rewritten contract violated the single document rule because it "provided for a finance charge when no contract existed." (*Nelson*, *supra*, 186 Cal.App.4th at p. 1004.) For these reasons, we

18

agree with the Court of Appeal that Raceway's backdating practice did not violate section 2981.9.

**IV.**

Plaintiffs in Class Two contend that Raceway violated section 2982(a) when it erroneously charged the plaintiffs for smog-related fees.

Under section 2982, subdivision (a)(1)(C), dealers must disclose, as part of the amount financed, "[t]he fee charged by the seller for certifying that the motor vehicle complies with applicable pollution control requirements." Under section 2982(a)(4), the seller must disclose "[t]he amount of the state fee for issuance of a certificate of compliance, noncompliance, exemption, or waiver pursuant to any applicable pollution control statute." Plaintiffs contend that because the smog-related fees listed on the contracts were inaccurate, the smog fee disclosures were not a "full and honest disclosure" as required by ASFA. Raceway, by contrast, urges us to adopt the Court of Appeal's reasoning and find ASFA to be inapplicable because there were no hidden fees, because the amounts charged for smog-related fees were accurately disclosed in writing, and because the fees were accepted by the customers when they signed their contracts. Raceway also argues that even if plaintiffs can establish a violation of section 2982(a), ASFA precludes rescission because the violation was due to an "accidental or bona fide error in computation." (§ 2983, subd. (a).)

Raceway is correct that the smog-related fees paid by plaintiffs were not hidden from them, and plaintiffs do not contend that they paid any more than the fees listed on their contracts. But in determining whether ASFA applies to a particular transaction, we must consider "its remedial purpose of protecting consumers from inaccurate and unfair credit practices through full and honest disclosures." (*Thompson*, *supra*, 130 Cal.App.4th at p. 978.) Moreover, "we look to the substance of the transaction and do not allow mere form to dictate the

19

result." (*Bermudez*, *supra*, 179 Cal.App.4th at p. 1323; see 13A Cal.Jur.3d (2016) Consumer & Borrower Protection Laws, § 394 [whether the act "appl[ies] to a particular transaction, is determined in light of the policies of the Act"].)

The purpose of ASFA is to " ' " 'protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost.' " ' " (*Hernandez*, *supra*, 105 Cal.App.3d at p. 69.)  An item of cost cannot be said to be "fully disclosed" to the consumer when the dealer concedes that the item was mistakenly included and when it has no intention of performing the task for which the fee was charged.  (See *Nigh v. Koons Buick Pontiac GMC, Inc.* (4th Cir. 2003) 319 F.3d 119, 124, revd. on other grounds *sub nom. Koons Buick Pontiac GMC, Inc. v. Nigh* (2004) 543 U.S. 50.)  The court's holding in *Thompson* is instructive.  As noted, the court there made clear that the fact that disclosures are *made* is not sufficient to satisfy ASFA; the dealership's actions caused "cost items that comprised the amount financed [to be] inaccurate and violated the ASFA's disclosure provisions . . . ." (*Thompson*, *supra*, 130 Cal.App.4th at p. 973.) Similarly here, by causing the cost item comprising the smog-related fees to be inaccurate, Raceway violated ASFA's disclosure provisions.

As for the availability of a remedy, section 2983, subdivision (a) says: "Except as provided in subdivision (b), if the seller, *except as the result of an accidental or bona fide error in computation*, violates any provision of Section 2981.9, or of subdivision (a), (j), or (k) of Section 2982, the conditional sale contract shall not be enforceable . . . ."  (Italics added.)  And section 2983.1, subdivision (d) says:  "When a conditional sale contract is not enforceable under Section 2983 or this section, the buyer may elect to retain the motor vehicle and continue the contract in force, or may, with reasonable diligence, elect to rescind the contract and return the motor vehicle."

In their reply brief, Plaintiffs contend for the first time that Raceway is not entitled to argue that its violation of ASFA was the result of an "accidental or bona fide error in computation" because Raceway failed to plead such a defense in its answer to plaintiffs' complaint. We generally do not consider arguments raised for the first time in a reply brief. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) But even if we were to consider plaintiffs' contention, we would find it meritless. The motion judge granted Raceway's oral motion to amend the answer to include the defense, and the trial judge acknowledged that decision as part of the law of the case.

Plaintiffs further contend that the defense is inapplicable here because an "error in computation" is limited to those errors involving "mathematical calculations" and does not encompass the programming errors in this case. But the word "computation" is susceptible to a broader meaning. "Computation" is largely synonymous with "calculation." (See Webster's Third New Internat. Dict. (1961) p. 468 [defining "computation" as "the act or action of computing: calculation, reckoning"].) A calculation may be understood to encompass both the arithmetic operation and the specification of the numbers to be included in the operation. For example, a football scoresheet that routinely assigned each field goal two points instead of three in the course of calculating final scores may readily be said to have committed an error in computation. Thus, section 2983, subdivision (a)'s reference to an "error in computation" is broad enough to encompass the type of programming error that Raceway claims led to the incorrect calculations here.

The Legislature is unlikely to have intended the narrow meaning of error in computation that plaintiffs urge as opposed to the broader meaning just discussed. The latter is consistent with the twin aims of ASFA: deterring dealer misconduct and avoiding windfalls for plaintiffs. (Comment, *Recent Legislation: The Rees-*

21

*Levering Motor Vehicles Sales and Finance Act*, *supra*, 10 UCLA L.Rev. at p. 151.)  When an accidental or bona fide error is the result of a computer glitch, as in this case, the deterrent effect of enforcing a rescission remedy is minimal because it is difficult to deter an inadvertent programming error.  On the other hand, allowing plaintiffs to rescind their contracts in this case, even after receiving a refund of the excess charges plus interest, would provide them a windfall.  "Section 2982 and its companion provisions of the Civil Code constitute a shield, not a sword, for the use of buyers in proper cases."  (*Stasher*, *supra*, 58 Cal.2d at p. 29.)

The trial court in this case made a factual determination that Raceway's inclusion of the smog fee charges was a bona fide error.  Raceway relied upon a computer program that incorrectly calculated the smog fee for used diesel vehicles.  Upon learning of the error, Raceway reimbursed all the plaintiffs the smog fees plus interest.  This is not the type of "abuse and malpractice" that the act was designed to prevent.  (Final Rep., 1 Appen. to Assem. J. at p. 8.)  To allow the plaintiffs to now rescind their contracts, after what could be years of using the vehicle, "would be to give plaintiff[s] an undeserved windfall at defendant's expense and in disregard of the true intent of the Legislature."  (*Stasher*, *supra*, 58 Cal.2d at p. 33.)  "[I]n some of [the dealers'] relationships with customers . . . it will be the dealer rather than the customer who needs protection . . . . When appropriate facts are shown courts should be equally as alert to protect the one party to a contract as the other."  (*Id.* at p. 34.)  This is such a case.

We note that other buyers who are charged excessive charges are not necessarily without a remedy.  First, if the charges were not the result of an "accidental or bona fide error in computation" (§ 2983, subd. (a)), the rescission and restitution remedies under section 2983 may be available.  Second, as the Court of Appeal recognized, it seems likely that if, unlike Raceway, a dealer were

22

not forthcoming with the payment or refunds, or if the dealer had charged erroneous fees with fraudulent intent, one of the other provisions of California statutory or common law may provide consumers a remedy. (See, e.g., Bus. & Prof. Code, § 17200.)

## CONCLUSION

For the reasons above, we affirm in part and reverse in part the judgment of the Court of Appeal with respect to Class One's claims. Because plaintiffs do not assert the APRs disclosed on plaintiffs' contracts are inaccurate within the tolerances permitted by Regulation Z, we reverse the judgment of the Court of Appeal to the extent it directs the trial court to conduct further proceedings concerning Class One's claims under the Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, § 2981 et seq.), and to the extent it vacates and directs further proceedings concerning the award of attorney's fees related to Class One's claims. In all other respects, we affirm the judgment of the Court of Appeal with respect to Class One's claims and Class Two's claims. Finally, we disapprove *Nelson v. Pearson Ford Co.*, *supra*, 186 Cal.App.4th 983 to the extent it is inconsistent with this opinion.

LIU, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
CUÉLLAR, J.
KRUGER, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Raceway Ford Cases

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 229 Cal.App.4th 1119
**Rehearing Granted**


_____

**Opinion No.** S222211
**Date Filed:** December 15, 2016

_____

**Court:** Superior
**County:** Riverside
**Judge:** Dallas Holmes*


_____

**Counsel:**

Rosner, Barry & Babbitt, Hallen D. Rosner, Christopher P. Barry, Angela J. Patrick and Lacee B. Smith for Plaintiffs and Appellants.

Arthur D. Levy for Consumers for Auto Reliability and Safety, Consumer Federation of California, CALPIRG and Consumer Action as Amici Curiae on behalf of Plaintiffs and Appellants.

Callahan, Thompson, Sherman & Caudill, Atkinson, Andelson, Loya, Ruud & Romo, Kellie S. Christianson and Yvette N. Siegel for Defendant and Respondent.

Arent Fox and Halbert B. Rasmussen for National Automobile Dealers Association as Amicus Curiae on behalf of Defendant and Respondent.

Greines, Martin, Stein & Richland, Robert A. Olson and David E. Hackett for California New Car Dealers Association as Amicus Curiae on behalf of Defendant and Respondent.

Severson & Werson, Jan T. Chilton and Mark J. Kenney for American Financial Services Association and California Financial Services Association as Amici Curiae on behalf of Defendant and Respondent.




*Retired judge of the Riverside Superior Court, assigned by the Chief Justice pursuant to article V, section 6 of the California Constitution.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Hallen D. Rosner
Rosner, Barry & Babbitt
10085 Carroll Canyon Road, Suite 100
San Diego, CA  92131
(858) 348-1005

Kellie S. Christianson
Atkinson, Andelson, Loya, Ruud & Romo
20 Pacifica, Suite 1100
Irvine, CA  92618-3371
(949) 453-4260